T. V. ADDINGTON *et al.* v. J. M. CANFIELD *et al.*

(Filed October 16, 1901.)

1. LOCAL LAWS—Upheld When—Power of Legislature. In case of an organic inhibition against the enactment of a local law, where a general law can be made applicable, the legislature has the power to determine whether or not a general law is applicable, and the courts will not inquire whether such power has been right fully exercised, but will uphold local laws enacted in such cases.

2. LEGISLATURE, POWER OF—Stock. The legislature has the power to provide for restraining stock from running at large in one portion of Oklahoma, and permitting it to run at large in other portions.

3. ART. 2, CHAP. 2, STAT'S. 1893, VALID AS AMENDED. The provisions of article 2, chapter 2, Statutes 1893, entitled "an act to regulate and restrain the running at large of domestic animals and to provide for fencing against them," as amended by the act approved March 10, 1899, Session Laws 1899, pp. 58 and 59 are valid and not in conflict with any constitutional or organic restrictions.

4. STOCK—May Run at Large, When. Stock is only permitted to run at large in the free range portion of the territory in those congressional townships and at such periods as all and the whole of the public school, college, public building and indemnity lands of such township are held under lease as provided by law.

5. PETITION FOR INJUNCTION—Must Allege, What. A petition which has for its purpose the obtaining of an injunction to restrain persons from interfering with stock running at large in the free range portions of the territory, which fails to aver that all the public school, college, public building and indemnity lands are leased by the school land board in the congressional township where it is sought to have such injunction operate, is fatally defective, and it is not error to sustain a demurrer to such petition.

6. RESTRAINING ORDER—Dissolved, When. A temporary restraining order which is so broad in its terms as to prohibit a land owner from driving trespassing stock off his own premises, or from protecting his growing crops against trespassing animals, is unauthorized and should be dissolved on motion.

7. **FREE RANGE LAW—Trespass, Damages for.** The law permitting stock to run at large in the free range territory, does not authorize persons in charge of stock to wilfully drive such stock upon the lands of another, nor to herd or hold stock upon the growing crops or unenclosed lands of another, and where such acts are wilfully done, the persons committing such acts will be liable in damages for any injury caused thereby.

8. **FORCE MAY BE USED IN PREVENTING TRESPASS.** Owners or occupants of lands under the homestead laws of the United States have the right to protect their lands and crops from the ravages of trespassing animals, and may lawfully guard their premises, and may resort to such force as is reasonably necessary to drive off any animals that may come thereon without their consent.

9. **FREE RANGE LAW—Purpose of.** The purpose of the free range law is to permit owners of stock to graze such animals upon the public commons without being liable for damages where such animals drift, stray or go upon the lands of others, without any volition of the persons in charge of such stock, but the law will not protect those who purposely drive or herd their stock upon the lands of others.

10. **STOCK—Damages for Injuring Trespassing.** Owners or occupants of lands, in driving or keeping off trespassing animals, may only resort to ordinary and reasonable means, and if they wantonly or purposely injure or damage such stock, they will be held liable for such acts.

(Syllabus by the Court.)

*Error from the District Court of Custer County; before C. F. Irwin, Trial Judge.*

*G. W. Paul, G. H. Paul* and *W. B. Paul,* for plaintiffs in error.

*Burnham & Burnham,* for defendants in error.

Opinion of the court by

Burford, C. J.: This was an action brought by T. V. Addington and a large number of residents of Custer, Dewey and Day counties to enjoin the defendants from in

any manner interferring with certain herds of cattle running on the open range.

The petition is very lengthy, and sets out that the plaintiffs are all engaged in raising and grazing cattle on the public lands and open range in the western portion of Custer county, and in Day and Dewey counties; that said country is free range territory, and that the defendants are occupants of lands in said territory, and have taken up, killed, injured, chased and ran their cattle, and caused them great and irreparable damage, and that unless restrained, the defendants will continue to damage, injure, kill, abuse, chase, and run said cattle.

The probate judge of Custer county, in the absence of the district judge, granted a restraining order. Afterwards the district court dissolved the restraining order, and sustained a demurrer to the petition. From this order and judgment the plaintiffs appealed to this court.

There are two assignments of error. It is first contended that the court erred in dissolving the temporary injunction, and next in sustaining the demurrer to the petition.

The first question presented for our determination is as to the status of the law usually termed the "herd law" or "free range law." It is contended by counsel for defendants in error that this law is invalid, and cannot be enforced. The law creates two great divisions of the territory. In the eastern portion the law prohibits stock from running at large unless permitted by a vote of the people in established districts, while in the western portion stock is permitted to run at large unless prohibited by a vote of

the people in certain districts. It is claimed that this is a local law, and therefore void. There is no prohibition against the enactment of local laws on this subject; the only inhibition is that no local law shall be enacted where a general law can be made applicable. As to whether a general law can be made applicable, is clearly a legislative function, and does not belong to the courts, and where the legislature has enacted such a law, the courts will assume that the legislature was of the opinion that a general law would not be applicable, and will uphold such legislative determination.

This question was before this court at an early day, in *Johnson v. Macabee,* 1 Okla. 204, and we adhere to the rule there enunciated.

It is next contended that the act of 1899, Session Laws 1899, p. 58, repeals all previous laws on the same subject and that it is not a valid amendment of section 31 of the original act of 1890. There is nothing to support this contention. The act of 1890, as incorporated in the Statutes of 1893, was held valid in *Macabee v Johnson, supra.* In 1897 the legislature amended section 31 of the original act, and in 1899 the act of 1897 was amended, thus again amending section 31. The amended act of 1899 becomes the substituted section for the original act, and must be read into it the same as if it had been thus originally enacted. The old section 31 and the amended section in the act of 1897 are abrogated. We find nothing in these amendments that violates any rule of legislative procedure which will affect their validity.

The plaintiffs in error contend that the court erred in dissolving the temporary injunction granted by the probate judge. This order is as follows:

"It appearing satisfactorily to me, L. A. Love, judge of the probate court of Custer county, Oklahoma territory, by plaintiffs' petition and affidavit thereto attached, verified on the 10th day of May, 1901, that the plaintiffs are entitled to the relief by injunction against the defendants and each of them and their confederates, agents and servants, prayed for in plaintiffs' petition. Therefore, on motion of the plaintiffs it is ordered by me, in the absence of Hon. C. F. Irwin, judge of the district court, that the above named defendants and each of them and their confederates, agents and servants and all others acting with and for them are hereby enjoined from carrying out the threats and performing the acts charged in the plaintiffs' petition.

"And it is further ordered that the defendants and each of them, their confederates, agents and servants, be and they are hereby each enjoined from in any manner interfering with the cattle or horses of the above named plaintiffs or either of them, now on the range west of the east line of range 17 west, and the defendants and their confederates, agents and servants and all other persons acting with and for them or either of them, are hereby enjoined from chasing with dogs or men or in any manner interfering with or molesting the cattle or horses of the plaintiffs or either of them now on the range west of the east line of range 17 west, aforesaid. And the defendants and each of them are hereby by mandatory order and injunction ordered to release and turn loose any of the cattle or horses which they now have impounded or in their possession or of either of them or that may be in the possession of the defendants or any of them or their agents or servants, and the defendants are enjoined from taking up or impounding or selling

or attempting to sell any cattle or horses belonging to any one or more of the plaintiffs upon any pretext whatever this order to continue in force until the further order of the court or judge; a violation of this order of injunction will subject the offender to attachment for contempt.

"Ordered, that the plaintiffs file a bond in the sum of two hundred dollars to the acceptance of the clerk of the district court.

"Given under my hand and official seal this 10th day of May, 1901.

"L. A. Love, Probate Judge."

In late years we have heard much of "government by injunction," and have heard political orators and agitators dilate upon the overthrow of liberty and the suppression of personal and private rights by the injunctional powers of courts, but this is the first real, actual example of "government by injunction" that has came under our observation. The order not only prohibits and commands everything prayed for in the petition, but it goes further and prohibits the unprotected homesteader from driving the wild and vicious Texas steer out of his door-yard; it prevents him from protecting his wife and children from the ravages of a stampeding herd; it prohibits him from standing on the borders of his growing crops and gently turning the roving cattle away from his possessions; it makes him guilty of contempt if he peaceably drives horses or cattle from his garden, orchard or cornfield; it compels him to stand idly by and see the products of his labor and industry consumed and destroyed, and will not permit him to raise his hand or voice to "interfere" with the devastating animals. And in every case where an agriculturist has been so fortunate as

to fence his crops with a lawful fence, or has enclosed his house or garden with a lawful enclosure, and a breachy animal has broken into the enclosure and been impounded under the provisions of the law, he is commanded to immediately turn loose all such animals. In fact, this order is so broad and comprehensive, that if one of these defendants or a member of his family should be attacked by a vicious animal, in the free range country, he would be in contempt of court if he resorted to the ordinary means of self-defense. If the plaintiffs had been entitled to prohibitory relief, they were not entitled to such an order as the one granted in this case, and the district court would have been negligent of its duties had it not properly dissolved such order at the first opportunity. It needs no citation of authorities to support the ruling of the district court in this matter.

The next question is, did the district court err in sustaining the demurrer to the petition? The objection that the petition fails to state facts sufficient to constitute a cause of action may be made at any state of the proceedings. By the terms of the law creating the free range territory, it is provided that such law shall only be in force in such congressional townships as in and during which all the school, college, public building and indemnity lands are held by lease according to the provision of law. This is not in the nature of an execution, or proviso to an affirmative declaration; it is one of the affirmative elements which must exist in order to put the statute in operation and make it effective, and the burden is on him who claims the benefits of the free range provisions, to show that the law is in force at the place where he claims its protection. The

failure to make this showing in the petition rendered it fatally defective, and it was proper to sustain the demurrer.

The provisions of this statute have given rise to many disputes and misunderstandings. Both cattle raisers and homesteaders have been wrongly advised as to their rights under the law, and much bad blood and ill-feeling have been engendered. There is no necèssity for this condition. The law is ample to protect both classes, and each should submit to it, and observe its provisions so long as the legislature deems it prudent to let it remain.

The purpose of the free range provisions is to enable persons engaged in the stock business to get the benefit of the open. range in the unsettled portions of the country, without rendering them liable for damages caused by their stock straying, drifting or grazing upon the unenclosed lands of another. But there are no special privileges conferred beyond this; the owners of stock must not permit their stock to be purposely or wilfully driven or herded upon the cultivated lands of others. If they do, this law affords them no protection. The land owner or occupant has at all times the right to guard and protect his possessions; the law takes from him no right, except the right to recover damages where the animals trespass upon him without the connivance of those in charge. He may lawfully drive them from his premises at any time, he may use such force as is necessary to protect his crops, orchards, gardens and improvements, so long as he does not do any wanton or willful acts of injury.

It was said by the supreme court of Nebraska in *Delaney v. Errickson,* 114 Neb. 533:

"While the owner of domestic animals may lawfully permit them to wander upon and depasture the uninclosed, uncultivated lands of others, he has no right to drive them there without the owner's permission, and if he do so, he is answerable for whatever damage they may do while there."

And this rule is applicable to the conditions here. Owners of stock in a free range country are not liable for damages done by their stock if they are turned upon the open range and wander or drift onto the cultivated lands of others, but if the owners or those acting for them, or having charge of the stock, purposely, intentionally or wilfully drive them onto, across or over the cultivated lands of another, and damage is occasioned thereby, such persons will be liable in damages.

Neither will the owner or possessor of cultivated or unenclosed lands be liable for damages, if he in the usual and ordinary methods drives and keeps off stock from his lands and possessions, and he may rightfully do this at any time; but if he resorts to abuse, maiming or killing such stock, he then becomes liable in damages. If these rules are observed, and the persons of both classes observe the rights of others, and keep within the law in enjoying their own privileges, there need be no serious difficulties, or contentions arise.

We know as a matter of common observation that there is much open land that is unfitted for any other purpose but grazing stock, and stock raising should be encouraged in all legitimate and proper ways; at the same time, the farmer and agriculturist constitute the very foundation which supports every commercial and business interest, and

their interests should be fostered, their rights protected, and their industries encouraged.

The judgment of the district court is affirmed, at the cost of the plaintiffs in error.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.