### JACK v. STATE.

No. 26512. June 15, 1937.

Rehearing Denied Sept. 28, 1937.

Application for Leave to File Second Petition for Rehearing Denied Sept. 27, 1938.

S. E. Byers, E. F. Lester, and Charles Swindall, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Ass't. Atty. Gen., for defendant in error.

OSBORN, C. J. This action was instituted in the district court of Oklahoma county by Mrs. Iris Jack, hereinafter referred to as plaintiff, against the State of

Oklahoma, hereinafter referred to as defendant, wherein plaintiff sought to recover damages for personal injuries received in an automobile wreck alleged to have resulted by reason of certain negligence of the officers, servants, and employees of the State Highway Department. From an order sustaining a demurrer to her petition, plaintiff has appealed.

Plaintiff relies upon the provisions of article 18, chapter 65, Session Laws 1935, a special legislative act, as her authority to institute and maintain this action. Said act is, in part, as follows:

"Whereas, on June 27th, 1930, while J. F. Jack was driving his automobile on the night of June 27th, 1930, along and upon State Highway No. 14 at a point about one mile north of Snyder, Oklahoma, he struck a certain large tree located in the main portion of said traveled highway and that as the direct and proximate result thereof, that said J. F. Jack's automobile was destroyed, and Mrs. Iris Jack, his wife, was seriously and permanently injured, and Bernice and Jeff Jack were seriously and mortally injured, from which injuries they thereafter died, and that J. T. Easum received serious and permanent injuries and Mable Easum received serious and permanent injuries and Clifford Easum received serious and permanent injuries as a result of said accident and as a direct and proximate result and were occasioned and brought about by the negligence of the officers, agent, servants and employees of the State Highway Department, in failing to maintain said highway at said point, in a reasonably safe condition of repair for public travel, on, through, and across said highway; * * *

"That the Legislature of the State of Oklahoma on behalf of the State of Oklahoma does hereby expressly waive the immunity of the state to be sued by J. F. and Mrs. Iris Jack * * * and said persons in their personal or representative capacity are authorized to prosecute an action in their own name or for the benefit of the minors, be and each of them are hereby authorized to bring suit against the State of Oklahoma in any court of competent jurisdiction in said state, to determine liability, and to recover the amount of loss and damage, if any, sustained by them by reason of the failure and neglect of the State Highway Department of the State of Oklahoma and its officers, servants, agents and employees in failing to maintain State Highway No. 14 at a point about one mile north of Snyder, Oklahoma, on the 27th day of June, 1930, and to determine in said cause and said court if the State of Oklahoma by and through its officers, agents, servants and employees of the State Highway De-

partment was negligent in its failure to maintain said highway in a reasonably safe condition of repair or in a reasonably safe condition for persons traveling thereon. * * *"

The allegations of plaintiff's petition, in substance, are that she is one and the same person as the Mrs. Iris Jack named in the above quoted act; that the State Highway Department is a part of the executive branch of the state government charged with the duty of maintaining all state highways, including State Highway No. 14; that said department had sufficient funds under its supervision and control to keep said highway in reasonably safe condition; that the officers, agents, and employees of the State Highway Department failed and neglected to perform its duties in this regard, but carelessly and negligently permitted a large tree, which was twelve inches in diameter at the bottom, to remain in the traveled portion of said highway; that on the night of June 27, 1930, she was riding in an automobile driven by her husband, J. F. Jack, as an invited guest; that said automobile was being driven in a cautious and prudent manner at a reasonable rate of speed; that said automobile struck said tree; that she was thrown against the parts of the car and upon the ground with great force, thereby sustaining certain injuries. The prayer of the petition was for damages in the sum of $20,000.

The state, in absence of an express statute creating a liability therefor, is not liable in a civil action for damages for the neglect of its officers or those they are obliged to employ, in improperly performing, or in failing to perform, their duties as such officers or employees. See Hazlett v. Board of County Commissioners of Muskogee County, 168 Okla. 290, 32 P. (2d) 940, and cases therein cited. Plaintiff takes the position that the legislative act is effective not only to authorize the institution and maintenance of this action, but to waive the non-liability of the state for the negligence of its agents and employees.

The Attorney General, appearing in behalf of the state, contends that legislation of this nature is prohibited by certain provisions of the Constitution. One of these provisions is section 59, article 5, which provides as follows:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

If this is a special law, and if a general law can be made applicable, then the act

must 'fall, and the ·trial' court did not err in sustaining a demurrer to the petition of plaintiff. It was the expressed intention of the framers of the Constitution that the abuses of granting special legislative favors to the few should not be tolerated, but that all citizens should receive equal rights, and none should have special privileges not granted to other citizens occupying the same status. That the act under consideration is a special act is unquestionable. Whether a general law can be made applicable is, in the first instance, a question presented for determination of the Legislature; but such determination is not conclusive on the judicial branch of government, as will hereinafter be pointed out by the cited authorities.

In the case of State ex rel. Roberts v. I. T. I. O. Co., 32 Okla. 607, 123 P. 166, it was said:

"In Guthrie Daily Leader v. Cameron, 3 Okla. 677, 41 P. 635, the fifth and sixth paragraphs of the syllabus are as follows:

" 'A statute relating to persons or things as a class is a general law. One relating to particular persons or things of a class is special. The number of persons upon whom the law shall have any direct effect may be very few by reason of the subject to which it relates, but it must operate equally and uniformly upon all brought within the relations and circumstances for which it provides.

" 'A statute, in order to avoid a conflict with the prohibition against special legislation, must be general in its application to a class, and all of the class within like circumstances must come within its operations. If it is limited in its application to one person or thing, and is enacted for one purpose and for one person, it then becomes special in its subject-matter and operation, and is void.' "

In the case of School District No. 85 v. School District No. 71, 135 Okla. 270, 276 P. 186, it is said:

"Special laws are those made for individual cases, or for less than a class requiring laws to its peculiar conditions and circumstances. Vermont L. & T. Co. v. Withed, 2 N. D. 82, 49 N. W. 318; Guthrie Daily Leader v. Cameron, 3 Okla. 677, 41 P. 635; Maxwell v. Tillamook Co., 20 Ore. 495, 26 P. 803; Healy v. Dudley (N. Y.) 5 Lans. (N. Y.) 115; 1 Bl. Comm. 186.

" 'A special act is one which 'operates merely on one particular thing, or on a particular class of things existing at the time of its passage.' City of Topeka v. Gillett. 32 Kan. 431, 4 P. 800; State v. Hunter, 38 Kan. 578, 17 P. 177: Dundee Mtge. & T. Inv. Co. v. Sch. Dist. (C. C.) 21 Fed. 151.

" '* * * Local or 'special 'laws ·are all those that rest on a false or deficient classification. Their vice is that they do not embrace all the class to which they are naturally related; they create ·preference and establish inequalities; they apply to persons, things, and places possessed of certain qualities or situations, and exclude from their effect other' persons, things, or places which are not dissimilar in these respects.' Trenton Iron Co. v. Yard, 42 N. J. Law, 357; 'State v. Burrough of Somers Point, 52 N. J. Law, 32, 18 Atl. 695, 6 L. R. A. 57; Lastro v. State. 3 Tex App. 363; Terr. v. Cutinola, 4 N. M. 160, 14 P. 809.

"We are not unmindful ·of the expression contained in Chickasha Cotton Oil Co. v. Lamb & .Tyner, 28 Okla. 275, 114 P. 333, on page 335:

" 'But the overwhelming weight of decided cases is that the final determination of whether a general law can be made applicable is for the Legislature, and that the decision of the Legislature upon such question is conclusive upon the court. * * * There is not an entire absence of authority holding the contrary to this rule, and strong reasons have been given to support same. That the majority rule in its application has not proven satisfactory in many instances is a matter of legislative history; and many of the states have sought to limit further the powers of the Legislature in relation to local and special legislation by inserting in more recent Constitutions provisions prohibiting such legislation upon specific subjects.'

"Special laws are not all local, but all local laws are special. This court has not hesitated to determine that a judicial question is presented when confronted with a local law based upon an arbitrary census calculation. How, then, can it with reason be said that we should adhere to a view that the question of whether or not a general law can be made applicable to the subject is exclusively confined to the Legislature, as a legislative, and not a judicial question? It cannot. The question is a legislative question pending passage of the act. The applicability of a general law is then a question for the Legislature to determine, 'and such a statute will not be declared unconstitutional except where it clearly appears that the Legislature was mistaken in its belief that a general law could not be made applicable.' 6 R. C. L. 418, par. 413; Richman v. Muscatine Co.. 77 Iowa, 513. 42 N W. 422, 14 A. S. R. 308, 4 L. R. A. ·445."

The exact question with which we are dealing has received considerable attention by the Supreme Court of South Carolina. In the case of Sandel v. State, 104 S. E. 567. 13 A. L. R. 1268, the court was considering the constitutionality of a special act which granted permission to sue the state for dam-

378

ages for the death of two children alleged to have been caused by their inoculation with impure vaccine by the State Board of Health. Section 34 of article 3 of the Constitution of South Carolina provides that where a general law can be made applicable no special law shall be enacted. The court held that the act did not violate this provision of the Constitution for the reason that a general act could not be made applicable in the circumstances under which the act was passed; that they were unusual and extraordinary; that such an event had never theretofore occurred and might never happen again; that the very nature of the case called for a special rather than a general law. In the case of Sirrine v. State (S. C.) 128 S. E. 172, the court expressly disapproved the reasoning adopted in the Sandel Case, and overruled the opinion. In that case the court was concerned with the constitutionality of an act which authorized suit to recover damages arising from an automobile collision between the plaintiff and a member of the National Guard of South Carolina. The syllabus in said case is as follows:

"Act Feb. 12, 1924 (Laws 1924, p. 1689), permitting N. McL. Sirrine to bring action against state for damages to automobile, held, a special law, where a general law could be made applicable, is in contravention of Const. art. 3, sec. 34, subd. 9, notwithstanding article 17, sec. 2, authorizing Legislature to direct in what manner claims against state may be established and adjusted.

"Act Feb. 12, 1924 (Laws 1924, p. 1689), permitting N. McL. Sirrine to bring action against state for damages to automobile held in effect a granting of special privilege to one citizen of state in violation of equal protection of law clauses (Const. U. S. Amend. 14; Const. art. 1, sec. 5), notwithstanding article 17, sec. 2, providing that General Assembly might direct in what manner claims against state may be established and adjusted.

"General Assembly's enactment of special law in effect records its decision that general law could not be made applicable, and under rules of constitutional construction, every reasonable presumption must be indulged in favor of validity of that decision, though question whether general law could have been made applicable is ultimately judicial question."

We quote further from the body of the opinion:

" 'Equality in right, privilege, burdens and protection is the thought running through the Constitution and laws of the state; and an act intentionally and necessarily creating inequality therein, based on no reason suggested by necessity or difference in condition or circumstances, is opposed to the spirit of free government, and expressly prohibited by the Constitution.'

"The rule for testing the validity of the Legislature's decision that a special law is necessary and that a general law could not be made applicable is thus stated by an able annotator (Freeman, note, 93 Am. St. Rep. 111):

" 'A law is not constitutional if it confers particular privileges, or imposes peculiar disabilities or burdensome conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those that stand in the same relation to the subject of the law. The Legislature may classify, for the purpose of legislation, if some intrinsic reason exists why the law should operate upon some and not upon all, or should affect some differently from others, but this classification must be based upon differences which are either defined by the Constitution, or are natural or intrinsic and which suggest a reason that may rationally be held to justify the diversity in the legislation. It must not be arbitrary, for the mere purpose of classification. The class must be characterized by some substantial qualities or attributes, which render such legislation necessary or appropriate for the individuals of the class.'

"Subjected to the foregoing test it is apparent, we think, that the special law here under review denies to those not included within its provisions the equal protection of the laws, and possesses not a single feature upon which a valid classification can be based. It attempts to exempt a single citizen of the state from the general law which precludes all other citizens of the state from recovering damages for injuries to person or property sustained as the result of the wrongful acts or omissions of an agent or servant of the state. It attempts to create a right to recover for such a tort in the courts of the state, and to confer that right—denied to all others—upon a single person. Why should Mrs. Sirrine be exempted from the general law when no other citizen is so exempted? Why should Mrs. Sirrine be clothed with the substantial right to recover damages for a tort of this character when no other citizen has, or is accorded, such right? If any basis for classification can be said to exist, it must be found in the peculiar facts and circumstances of the injury alleged to have been sustained by Mrs. Sirrine. The statute discloses nothing unique or peculiar in the circumstances of the alleged injury which would serve to distinguish it, either in a legal or moral sense, from any other injury to property, resulting from the wrongful act or omission of an agent or servant of the state, or of any political subdivision thereof. But,

If it did, the statute makes no attempt to classify the privilege granted Mrs. Sirrine upon the basis of anything extraordinary in the circumstances of the injury, in the aspect of their moral appeal or otherwise. The right to recover damages is made to depend wholly upon the existence of negligence on the part of an agent or servant of the state under the doctrine of respondeat superior applicable to private individuals and corporations. * * *

"That the crown or the state is not legally liable for the wrongful acts of its officers, agents, or servants, in the absence of statute, is an ancient and well-settled rule—a rule recognized and applied by this court in a long line of decisions. See 25 R. C. L. 407, sec. 43; LaBatt (1913 Ed.) vol. 7, p. 7061; Foster v. Union, 129 S. C. 257, 262, 123 S. E. 839, and cases therein cited. Having given due recognition to that rule herein, for the reasons above indicated, we think the different conclusion reached in this case is imperatively required. In so far, therefore, as the decision in Sandel v. State, 115 S. C. 170, 104 S. E. 567, 13 A. L. R. 1268, is not in accord with the views herein announced, that decision is expressly overruled."

It is noted that the constitutional provision of South Carolina is practically identical with our own and in addition the Constitution of that state provides that: "the General Assembly may direct by law in what manner claims against the state may be established and adjusted" (sec. 2, art. 17). In the later case of Ouzts v. State Highway Department, 159 S. E. 457, the Court of South Carolina approved as constitutional a general law authorizing a recovery for injuries brought about by the negligent acts of servants, agents, and employees of the State Highway Department.

In the case of Collins v. Commonwealth (Pa.) 106 Atl. 229, we find the following pertinent language:

"An illustration for the character of the case now before us will demonstrate the fact that favoritism in its most obnoxious form might thus be made possible. Smith and Jones might be injured in the same accident due to the same alleged defect in the highway. Each would be without legal claim or right of suit; but Smith, through favoritism, might get a special act passed in his favor, and Jones, being without such friends, would go unrequited. The people, by the present Constitution, determined that their representatives in the General Assembly should be relieved of both the burden and the obloquy of such possibilities, and it is our duty, as well as our pleasure, to see that the will of the people is obeyed. * * *

"It follows from what has been said that where there is neither liability for the alleged tort, nor a right to sue, the Legislature cannot by a special act vest in a particular individual a right both to sue and to recover for the tort. A general act is the only remedy for that state of affairs. But if there was a liability at the time the act authorizing suit was passed, then that act, though special, would not change the practice and rules of evidence in the judicial proceeding authorized, nor would it be granting a special privilege or immunity to an individual, and hence would not be obnoxious to article 3, sec. 7; nor would it be an appropriation of the state money to any person, or the payment of a claim against the commonwealth without previous authority of law, as forbidden by sections 11 and 18 of the same article. The learned deputy Attorney General, who so ably argued this case for the commonwealth, recognizing that that conclusion was correct, expressly admitted that such an act would be unobjectionable."

In the recent case of State v. Isbell (Comm. of App. of Texas), 94 S. W. (2d) 423, the court was considering a legislative resolution authorizing the institution of a suit against the state to determine the damages arising from alleged negligence of an inspector of the Live Stock Sanitary Commission in dipping cattle. The court said:

"If, therefore, the resolution here in question was one attempting to create liability upon the part of the state for the alleged negligent acts of the inspector of the Live Stock Sanitary Commission, we think it would be void, as it seems to be well settled that such could only be done by a general law of the Legislature. Collins v. Commonwealth. 262 Pa. 572, 106 A. 229; Sirrine v. State, 132 S. C. 241, 128 S. E. 172."

We shall refer briefly to the cases relied upon to support the constitutionality of the special act. In the case of Austin W. Jones v. State (Me.) 119 Atl. 577, the plaintiff sued the state and recovered damages to certain property destroyed by fire. It was shown that the fire was kindled by an insane person, who had been negligently paroled from an asylum. A legislative resolution authorized the institution of the suit. It was held that the resolution authorizing the action, and providing that the liabilities of the parties should be the same as between individuals, rendered the doctrine of respondeat superior applicable to the state. It does not appear that the resolution was attacked as special legislation, and no contention is made that a general law would have been applicable.

In the case of Mills v. Stewart (Mont.) 247 P. 332, the court was concerned with

an act of the Legislative Assembly which authorized investigation into a claim against the state in behalf of one George A. Reitz, who was injured when he fell down an open elevator sh'aft while attending the State University, as a student. The act provided an appropriation of $7,500 or so much thereof as was necessary to pay the claim, if it was allowed by the board of examiners. The sole ground of attack upon the constitutionality of the act was that it was violative of a constitutional provision prohibiting the state from making donations or grants. It was pointed out that if the state, in advance of the injury, had by general law assumed liability for the negligence of its agents in charge of the University building, there would be no question as to the validity of the claim; that the Legislature was authorized to extend the liability of the state to pay for injuries caused to private individuals, and that the power was not limited to the establishment of a general rule for the future. It was therefore held that the appropriation to meet the liability thus established was for a public and not a private purpose. No contention was made that a general act could have been made applicable in this case, and there is nothing in the opinion that indicates that the act was attacked as a special law.

In the case of Pennington's Administrator v. Commonwealth (Ky.) 46 S. W. (2d) 1079, it appeared that one Annie May Pennington, who was a student in the Kentucky Industrial College, lost her life when the building in which the institution was being conducted was destroyed by fire. The General Assembly at its 1930 session passed a resolution authorizing the institution of an action against the Commonwealth of Kentucky for the purpose of determining the liability of the commonwealth for such injuries and death. The sole contention in that case was that the resolution merely waived the immunity of the state from suit, "and that it does not either expressly or impliedly waive the right of the commonwealth to insist on its immunity from suit arising from the mistake or negligence of its agents or employees in the construction and operation of the building or their failure to equip it with adequate equipment in case of fire." It was held that "when the commonwealth by resolution consented without reservation that it might be sued, it thereby consented to be brought before its courts as any other defendant, and that appellant's claim against it was to be determined by the court according to those settled rules of law upon which the responsibility in like actions of individual litigants is determined."

Although the issue is not involved in any of the three cases to which we have just referred, it is apparent that, due to the unusual and extraordinary fact situation existent in each of the cases, there would be merit in the argument that a general law could not be made applicable.

In the instant case, however, we can perceive no reason why a general law cannot be made applicable. There is nothing unusual or extraordinary in an individual sustaining injuries upon one of the public highways maintained by the state, which injuries might be traced to some act of negligence on the part of one of the hundreds of agents and employees of the state. The increased building of highways and the increased use of the highways by state employees may result in many accidents caused by negligence of such state agents and employees. There can be no valid reason why these victims of the alleged carelessness and negligence of the agents and employees of the state should be recompensed from the public treasury pursuant to a special permissive act of the Legislature when other victims of the same or similar acts of negligence are required to go unrecompensed by reason of the failure of the Legislature to pass an act permitting such recovery.

Considerable reliance is placed upon our opinion in the case of State v. Fletcher, 168 Okla. 538, 34 P. (2d) 595. There is a controlling difference between the facts in that case and the facts in the instant case. In that case the liability was fixed by express provisions of the Constitution which were in full force and effect long prior to the accrual of the damage. In the instant case it is sought to **create the liability** by special act. In that case it was held that a special act authorizing a suit against the state caused by the drainage of sewage from the Western Oklahoma Tuberculosis Sanatorium through the premises of the plaintiff, Fletcher, was not violative of the provisions of section 51 or section 52 of art. 5, or section 59, art. 5, or of Subdivision (z) of section 46, art. 5, of the Constitution, since these provisions were not enacted for the benefit of the sovereign state but for the benefit of the individual citizens of the state. It is at once apparent that a general law could not have been made applicable in that case. It is evident that the special act did not operate to grant to Fletcher any special right or privi-

lege not enjoyed by others under like circumstances, but merely afforded to him a means of enforcement of the rights and privileges granted him by the Constitution. It was held, in effect, in that case that the Legislature had waived, in behalf of the state, the defense of the statute of limitations, and it is insisted that, by the same process of reasoning, in the instant case, the Legislature has waived the immunity of the state from liability for the torts of its agents. We may concede that the language used in article 18, chap. 65, S. L. 1935, is broad enough to disclose a legislative intent not only to waive the immunity of the state from suit, but to assume liability for such negligence of its agents as might be established upon a trial of the cause. We may also concede that if the act did not contravene a positive provision of the Constitution, we would be forced to give it such construction and effect. The sole issue in the instant case is the constitutionality of the act. What we have said sufficiently distinguishes this case from the Fletcher Case. As heretofore stated, the constitutional provisions above referred to were enacted for the benefit of the individual citizens of the state. Those who framed the Constitution undoubtedly intended that every citizen should stand upon an equality before the law. If, due to some unusual or extraordinary circumstance, it becomes necessary to enact a special law to provide a means of enforcement of the rights of an individual citizen, such special law is not prohibited, but the Legislature may not discriminate between members of a definite class.

As to whether a general law can be made applicable to a given situation is a question which must first be determined by the Legislature, but it is not exclusively a legislative question. If it clearly appears that the determination of the Legislature upon the point is erroneous, it is the duty of the court to so hold, and to uphold the Constitution by striking down such legislation.

We are of the opinion that the act in question is prohibited by section 59, article 5, of the Constitution. The trial court did not err in sustaining a demurrer to the petition.

The judgment is affirmed.

BAYLESS, V. C. J., and RILEY, BUSBY, PHELPS, and CORN, JJ., concur. HURST, J., concurs specially. WELCH and GIBSON, JJ., dissent.

WELCH, J., (dissenting). The plaintiff here sued to recover damages for personal injuries received in an automobile wreck, alleged to have resulted from certain negligence of the officers, agents, servants, and employees of the State Highway Department.

Plaintiff relies on the provisions of article 18, ch. 65, S. L. 1935, as expressly consenting that she sue the state, and also as expressly assuming liability to her for any negligence of the officers, agents, servants, and employees of the State Highway Department.

It is fundamental that the state cannot be sued in any manner or upon any liability, constitutional, statutory, or contractual, unless there is express consent thereto. The act in question expressly consents to the action against the state, but the Attorney General argues the suit may not be maintained for three reasons: (1) Because there was no prior general act applicable to all persons in which the state waived its immunity from liability for the torts of its agents or employees; (2) that the act in question is unconstitutional because in violation of section 15, art. 10, in that it is a gift to the persons therein named; and (3) the act is an unconstitutional special law passed in violation of section 46, art. 5, of the state Constitution.

In so far as merely consenting that the state may be sued is concerned, it is conceded that such an act may be passed. So that the question before us is whether the Legislature by special act may waive immunity from liability as to prior negligence of agents or employees.

The exact question has not heretofore been considered by this court, but has been considered in other states, some holding one way and some the other.

The Supreme Courts in Kentucky, Maine, and Montana uphold such enactments against all attack. Pennington, Adm'r, v. Commonwealth (Ky.) 46 S. W. (2d) 1079; Jones v. State of Maine (Me.) 119 Atl. 577; Mills v. Stewart, Secy. of State of Montana (Mont.) 247 P. 332.

The Supreme Court of California indicates by its statement in Chapman v. State, 104 Cal. 690, 38 P. 457, that it would hold such enactments to be contrary to the gift provision of the Constitution. The so-called California rule is expressly departed from in the Montana case of Mills v. Stewart, supra, and is criticized in the Arizona case of Fairchild v. Huntington, 205 P. 814, 22 A. L. R. 1438.

The Supreme Court of South Carolina in striking down such an act in Sirrine v.

State, 128 S. E. 172, seems to have taken the view that the enactment was void because a general law could have been passed and made applicable, and was void for the further reason that the act granted a special right and privilege to Sirrine not granted generally to other claimants against the state, thus violating the "equal protection of the laws" provision of the Constitution.

The Supreme Court of Pennsylvania, in Collins v. Commonwealth, 106 Atl. 229, was of the view that such an act violated the constitutional provision that:

"The General Assembly shall not pass any local or special law * * * regulating the practice or jurisdiction of or changing the rules of evidence in, any judicial proceedings."

Thus we observe that there are divergent views among those courts which strike down such enactments.

Those courts which have considered and upheld such acts are quite forceful in their pronouncements, and I am inclined to follow their reasoning and conclusions. The Constitutions of Kentucky, Maine, and Montana contain provisions quite similar to our own, so that their decisions are as persuasive to our minds as decisions of other states are in any of our cases.

It is a well-settled rule, and we have often held that it is our duty to uphold a legislative enactment unless it is clear that it violates the Constitution.

The Attorney General urges upon us the South Carolina rule, contending that the Legislature might have passed a general statute assuming liability for all torts of all officers, agents, and employees of the state, and that, since no such general act was passed, the Legislature ought not to be permitted to pass such special act as is here considered.

The Attorney General emphasizes the fact that he prepared such a general act at the request of certain legislators during the same session, but that it was not adopted. This leads to the conclusion that the Legislature deemed it the better policy not to adopt the general act, but to consider this and similar claims and to pass special acts where justified. The same session which failed to adopt the general act prepared by the Attorney General did adopt this special act and a score of others dealing with similar claims or situations. This clearly indicates a legislative policy. Whether this policy or a general act assuming liability for all torts of

all officers, agents, and employees, might or would be a better policy, we are not authorized to determine. It is well settled that the "public policy" of a state is determined by enactments of the Legislature on subjects concerning which it has seen fit to speak. Mahaffey v. Smith (Mont.) 254 P. 875; Cruse v. Fischl (Mont.) 175 P. 878.

And the rule is well settled that the courts may not consider or determine the wisdom of legislative enactments or the wisdom of the public policy which is fixed by the legislative enactments. Those matters are for determination by the Legislature. The courts may only consider and determine the power or lack of power of the Legislature to pass a given enactment.

The Attorney General urges that this act constituted a gift as is prohibited by section 15, art. 10, of our Constitution. In Hawks v. Bland, 156 Okla. 48, 9 P. (2d) 720, and Wright v. Carter, 161 Okla. 281, 18 P. (2d) 522, and Carter v. Thomas, 172 Okla. 558, 46 P. (2d) 460, this court sustained attacks against three legislative acts as being violative of that constitutional provision. However, in each of those cases the legislative act under consideration was an appropriation of money to pay to the individual concerned, the money to be so paid without any judicial determination of liability or of the amount due or to be paid. The act here under consideration does not appropriate money to be paid to Iris Jack, but authorizes an action to be brought wherein there would be a judicial determination of the plaintiff's claim of negligence, and in the event negligence was established, and that it was the proximate cause of plaintiff's injury, then there would be judicial determination of the proper amount of plaintiff's claim. Thus we distinguish this act and this case from those three decisions which are urged and relied upon by the Attorney General. The enactment in this case is no more a gift than was the enactment considered by this court in State v. Fletcher, 168 Okla. 538, 34 P. (2d) 595. The act there considered did not appropriate money to pay to Fletcher, but it authorized him to maintain an action for judicial determination of his damage claim. If the word "gift" is used in a highly restricted sense, then it may be that a gift is made when a legislative enactment gives to a designated person a right to sue the state, which right he did not have and possess until the passage of such act, as in the Fletcher Case, supra, but if the word "gift" is used in its more generally accepted meaning, then the Legislature does not make a gift to a

seriously injured person when the Legislature permits him to maintain an action against the state in which he may seek to show to the satisfaction of the court and jury the cause of his injury, and the nature and character thereof as well as it may be measured in money damages.

It was clearly the intent of the Legislature by this enactment that the plaintiff might have an opportunity for judicial determination of those questions, thus resulting in a judicial fixing of the amount of plaintiff's damages. It would then be the province of the Legislature to make or not make provision for the payment of such judicially determined claims.

We conclude that the adoption of the act permitting the plaintiff to sue and obtain such judicial determination is not a gift within the meaning of the Constitution and our former decisions above cited.

It is next urged by the Attorney General that the enactment here considered violates section 46, art. 5, of our state Constitution, which is in part as follows:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law * * * regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts. * * *"

As I analyze that provision, it intended to prohibit the Legislature from passing any law which would regulate the practice or judicially change the rules of evidence as to any special locality, or as between any special litigants. I consider that it refers to or had in mind citizens who were contending as adversary litigants, and that it had no special reference to the power of the Legislature to permit or to decline to permit any particular suit against the state. This must be so, as it is a universal rule that the Legislature may permit or refuse to permit any person to sue the state. And in the event of granting permission to sue, the Legislature may specify the place where such suit must be brought, and the court in which such suit may be brought. And it is also true that such provisions, when they are made, are exclusive, so that such suit may be maintained only in the manner specifically authorized.

And the Legislature may specify the person on whom summons is to be served, and may limit the amount for which such action may be brought, and in general may place such limitations upon the consent to sue as seem proper to the Legislature. State v. Superior Court (Wash.) 151 P. 108; see, also, 59 C. J. 304, par. 461, and the numerous authorities there cited.

All these rules, recognized both before and after the adoption of our Constitution, lead to the conclusion that by the adoption of section 46, art. 5, there was no intention to change any of the foregoing rules. In State v. Fletcher, supra, we held, as stated in paragraph 2 of the syllabus, that section 46 of article 5 was not adopted "for the benefit of the sovereign state, but for the benefit of individual citizens of the state."

And I conclude that the act under consideration authorizing the maintenance of this action, with special provision for the service of summons, is unaffected by the quoted provision of section 46, art. 5, of our Constitution.

In so concluding I am in accord with the former pronouncement of this court in the Fletcher Case, though it may be, as the Attorney General suggests, that we go contrary to the Pennsylvania rule in Collins v. Commonwealth, supra.

In Mills v. Stewart, 247 P. 332, the Supreme Court of Montana, in considering an identical question, upheld the special act. The opinion contains a thorough discussion of the various questions and notices, and discusses the so-called California rule. In the body of the opinion it is said:

"The question then arises: Was it within the power of the Legislature to give recognition to the Rietz claim by assuming a limited liability for the negligence, if any, of the state's agent? * * *

"In 26 R. C. L. 66 it is said: 'The power of the Legislature to make the state or one of its subdivisions liable for injuries inflicted by it upon an individual is unquestioned, even if there was no liability at common law.'

"Rietz has a valid claim against the agent through whose negligence he was injured, and if, in advance of the injury, the state had, by general law, assumed liability for the negligence of its agents in charge of the university buildings, there would not be any dissent in the authorities from the conclusion that an appropriation to discharge such liability would be for a public purpose. But in California it has been held that a state may not assume and discharge a liability for the negligent act of its agent after the resulting injury has occurred, and this upon the theory that, under such circumstances. the appropriation made to discharge the liability constitutes a gift. Bourn v. Hart, 93 Cal. 321, 28 P. 951, 15 L. R. A. 431, 27 Am. St. Rep. 203; Chapman v. State, 104 Cal.

690, 38 P. 457, 43 Am. St. Rep. 158. The contrary conclusion was reached in Iowa (Metz v. Soule, 40 Iowa, 236), and in principle in West Virginia (Woodall v. Darst, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, and in Massachusetts (Re Opinion of Justices, 211 Mass. 608, 98 N. E. 338; Opinion of Justices, 240 Mass. 616, 136 N. E. 157, 23 A. L. R. 610), while the decision in Bourn v. Hart is disapproved by the Supreme Court of Wyoming (State v. Carter, 30 Wyo. 22, 215 P. 477, 28 A. L. R. 1098) and by other courts.

"We are unable to appreciate the distinction drawn by the California court between a claim of this character founded upon a statute enacted prior to the time an injury occurred and a claim predicated upon a statute enacted after the injury. In 26 R. C. L. 64, it is said: 'The power of the Legislature to extend the liability of the state or of municipal corporations to pay for injuries caused to private inidividuals is not limited to the establishment of a general rule for the future.'

"We do not discover any provision of our Constitution which forbids the Legislature to assume liability for injury resulting from the negligence of the state's agent, whether the liability is assumed before or after the injury occurs. * * *"

The Court of Appeals of Kentucky upheld an identical act in Pennington, Adm'r, v. Commonwealth, 46 S. W.2d 1079, and as to the effect of the act said, that by it the commonwealth "thereby consented to be brought before its courts as any other defendant, and that appellant's claim against it was to be determined by the court according to those settled rules of law upon which the responsibility in like actions of individual litigants is determined."

The Attorney General argues that these two cited cases are contrary to the decision of this court in Whiteneck v. Board of Com'rs, 89 Okla. 52, 213 P. 865. I do not agree. The Whiteneck Case holds the county is not liable for torts. It may be authority for the principle that the state is immune from liability in the absence of some enactment assuming liability or waiving immunity from liability, but there is nothing there to indicate that such enactment must be adopted prior to the injury.

It is, of course, fundamental that in the absence of some legislation to the contrary the state is not liable for damages in such cases. That rule was well stated by the Supreme Court of Washington in Riddoch v. State, 123 P. 450, in these words:

"A sovereign state is not liable for the misfeasance, malfeasance, nonfeasance, or negligence of its officers, agents, or servants, unless it has voluntarily assumed such liability."

That decision is not in point here, as there was there no enactment assuming liability. But the decision fully recognizes the power of the Legislature to assume such liability, and does not restrict the power only to the adoption of enactments prior to the injury.

In 59 C. J. 195, there is stated the general rule that:

"The Legislature may waive the state's exemption from liability for the torts of its officers and agents, and prescribe conditions of recovery. This right and power is very wide, and is not confined to principles defining liability in actions for tort between individuals. Where the state had thus voluntarily assumed liability, recovery may be had against it. * * *"

The text does not expressly say that this assumption of liability may occur after the negligent act and injury, but the text cites and is based upon the Montana case of Mills v. Stewart, supra, where the act was subsequently passed, and it seems clear that the text means to state that the Legislature may subsequently assume liability or waive immunity from liability if the intention of the Legislature to do so is made to appear by clear and unambiguous language.

It is a matter of common knowledge that the increasing use of our highways has resulted in an increase of accidents, caused by negligence, resulting in great loss of life and great injury to persons and property. And that the increased building of highways and increased use of highways by state employees may result in many accidents caused by negligence of such state agents or employees, and that other varied activities of the state may result in accidents and personal injury caused by negligence of agents or employees. It is but natural that any state should adopt some means to deal with the problem. Some of the states have adopted general laws providing for a general assumption of liability by the state, while other states have adopted the policy of dealing with each situation by the passage of a special act after the injury, assuming such liability as seems proper, and consenting to suit. This latter policy has been adopted by our Legislature, as instanced or indicated by the fact that the same session of the Legislature which passed the act now under consideration passed several similar acts, and declined to pass the general liability act prepared by the Attorney General; and this policy is further indicated by the similar

special acts passed by the state Legislature at its regular 1937 Session. It is suggested that some other states have considered the handling of this problem through the method of compulsory liability insurance.

I regard it as the province of the Legislature to prescribe the public policy of this state as to these matters, and when our Legislature has spoken and fixed the state's policy by its enactments, that is our state policy until such time as the Legislature shall see fit to fix a different policy which they deem more meritorious. And I regard it as our duty to follow the legislative branch of government in this matter of state policy. And as I regard our duty, we have no other course. It is pointed out that this policy will be overburdensome to the Legislature, and will or may result in inequality or possible abuses. If that becomes true, the matter can be speedily corrected by the Legislature. That branch of our government has made this effort, at least for the present, to deal with the problem in this matter. We should not strike down this legislative effort made in behalf of this unfortunate plaintiff, unless convinced that we are forced to it in the proper discharge of our duty. It is always our fixed duty to sustain legislative enactments, unless our attention is directed to some constitutional provision which is clearly violated by the questioned enactments.

I conclude that the act here considered is not unconstitutional for any of the reasons urged by the Attorney General. I conclude that the effect of this act is to permit the plaintiff to maintain this action, with the right on the part of the state to defend the action. And if the plaintiff can establish to the satisfaction of the trial court and jury that her injury was proximately caused by the negligence alleged, and can establish the amount of her damage, all within the recognized rules of evidence and procedure, that plaintiff may then have her damage fixed by verdict and judgment of the trial court. The result then will not be a judgment in the sense that its collection can be enforced by the regular or usual court process, but the result will be a judicial fixing of the amount and cause of plaintiff's damage. All this I conceive to be in accord with the legislative intent in the adoption of the act under consideration.

The trial court sustained a demurrer to plaintiff's petition. I conclude that such action was erroneous, and that conclusion and judgment should be reversed, and the cause remanded with directions to overrule the demurrer, and that the cause proceed consistent with the views herein expressed.

I therefore respectfully dissent from the majority opinion.

On Application for Leave to File Second Petition for Rehearing.

PER CURIAM. Application Denied.

WELCH, GIBSON, and DAVISON, JJ., dissent.

HURST, J. (specially concurring). After considering this cause further on petition for rehearing, I believe the conclusion reached in the majority opinion is correct, but dissent to the reason given for holding that the petition does not state a cause of action.

■ I think the demurrer to the petition was properly sustained on the ground that, by the act authorizing the suit, the state did not waive its immunity from liability for the torts of its officers. The act (ch. 65, art. 18, S. L. 1935) merely waived the immunity of the state from suit. It does not expressly waive the immunity of the state from liability, and to hold that it has that effect must be by construction of the language used. It is well settled that acts of the Legislature authorizing suits against the state are in derogation of the state's sovereignty, and are strictly construed. 59 C. J. 303, 304, 1122; 25 R. C. L. 416; Lewis' Sutherland, Statutory Construction (2d Ed.) sec. 558; 42 A. L. R. 1475. This court is committed to this rule. Hawks v. Walsh (1936) 177 Okla. 564, 61 P.2d 1109. Following the rule of strict construction, it is generally held that an act that merely waives the state's immunity from suit will not be extended beyond the language used, and will not be construed, by implication, to waive immunity from liability. 59 C. J. 304; 42 A. L. R. at 1492. The effect of such a statute is to permit the state to be sued, but subject to all its lawful defenses. This rule likewise has been adopted by this court. Whiteneck v. Board of County Commissioners (1923) 89 Okla. 52, 213 P. 865; Board of County Commissioners v. Hancock (1925) 96 Okla. 238, 221 P. 429.

■ The majority opinion holds that the question as to when a general law cannot be made applicable so as to permit the enactment of a special law under section 59, art. 5, of our Constitution, is a judicial question and not committed exclusively to the Legislature. The majority follows the decision in School District No. 85 v. School District No. 71 (1928) 135 Okla. 270, 276 P. 186.

Section 59, art. 5, of our Constitution is found in substance in the Constitutions of many of the states, and it is generally held that the question as to when a general law can be made applicable is one of fact for the Legislature to find, and its determination will not be inquired into by the courts. It is analogous to the attaching of the emergency clause to a legislative enactment. Oklahoma City v. Shields (1908) 22 Okla. 265, 100 P. 559. This was the view entertained by the courts of our neighboring states of Kansas, Missouri, Arkansas, Texas, Colorado, and Nebraska, and other states, having a similar constitutional provision, at the time of the adoption of our Constitution. 12 C. J. 886, note 35. In 1886, Congress passed a law (24 Stat. 170) applying to all territories, which was in substance the same as section 59, art. 5, of our Constitution, and our Territorial Court repeatedly held that the question was committed exclusively to the Legislature Johnson v. Mocabee (1893) 1 Okla. 204, 32 P. 336; Guthrie Daily Leader v. E. D. Cameron (1895) 3 Okla. 677, 41 P. 635; Addington v. Canfield (1901) 11 Okla. 204, 66 P. 355. Furthermore, the Supreme Court of the United States adopted this rule in Guthrie National Bank v. City of Guthrie (1899) 173 U. S. 528. After the adoption of our Constitution, this court in four decisions held that the question is purely a legislative question. Oklahoma City v. Shields, supra; State v. Brown (1909) 24 Okla. 433, 103 P. 762; Chickasha Cotton Oil Co. v. Lamb & Tyner (1911) 28 Okla. 275, 114 P. 333; Hatfield v. Garnett (1915) 45 Okla. 438, 146 P. 24. See, also, Bishop v. City of Tulsa (1922) 21 Okla. Cr 457, 209 P. 228.

I think this court fell into error in School District No. 85 v. School District No. 71, supra, and that the decision in that case should be overruled. It followed the minority view stated in 6 R. C. L. 418. It referred only to Chickasha Cotton Oil Co. v. Lamb & Tyner, supra, and did not mention the other cases above cited. It was there held that the act in question violated section 46, art. 5, and section 20, art. 10, of our Constitution, and it was not necessary to overrule our former decisions and hold that the act violated section 59, art. 5. We must assume that the makers of our Constitution were familiar with the construction that had been placed upon similar provisions in the Constitutions of the other states, and with our territorial decisions and the United States Supreme Court decision construing the territorial law, and intended to adopt such construction. 12 C. J. 717. To now change the rule of construction is to, in effect, amend our Constitution by judicial decision. This we have no right to do. If the question should, in fact, be a judicial one, we can make it so by the adoption of an amendment to our Constitution in the manner authorized as was done in Kansas and Missouri, which fact is referred to in Chickasha Cotton Oil Co. v. Lamb & Tyner, supra.

What I have said applies only to special laws enacted pursuant to section 59, art. 5, and not to local or special laws enacted in violation of section 46, art. 5, of our Constitution.

I am authorized to say that Justice DAVISON concurs in this opinion.