HIGHWAY DEPARTMENT — INSURANCE Contracts for construction on the State Highway system are subject to the provisions of 69 O.S. 1101 [69-1101] (1971) as well as H.B. 1665 of the 1974 Legislature insofar as the two statutes are not in conflict. As to those instances of conflict, the more stringent provision is to be followed. The requirement of endorsing the agency and its architects or engineers as an additional assured on the contractor's workmen's compensation policy may not be waived by reason of the existence of a policy covering claims of the agency's employees since the endorsement contemplated would not result in coverage of claims of employees other than those of employees of the contractor, its subcontractor and suppliers. Likewise, the public liability endorsement may not be waived by reason of the existence of the doctrine of sovereign immunity or vehicle liability insurance since the endorsement contemplated would not result in coverage of claims beyond that of the contractor's public liability policy covering potential liabilities based on acts of the contractor, its subcontractors and suppliers, and their employees. The only persons required to be named as additional assureds along with the public agency under such policies are the public or private professional architects and engineers as defined by 59 O.S. 45.3 [59-45.3] (1971) and 59 O.S. 475.2 [59-475.2] assigned to the particular project. The inability to acquire the required insurance provides no basis for relieving the contractor of his statutory duty or for the agency to proceed with the execution of the contract and work order. Federal regulations prohibiting the requirement of maintenance bonds on federal highway projects supersede provisions of H.B. 1665 by virtue of 69 O.S. 304 [69-304](d) and 69 O.S. 401 [69-401] (1971). Right-of-way clearance projects constitute public improvements and such contracts are subject to the provisions of H.B. 1665. The Attorney General has considered your request for an opinion wherein you make the following inquiries concerning H.B. 1665 of the 1974 Legislature: 1. "The official opinion of the Attorney General is respectfully requested as to whether contract construction on the State Highway System will be governed by 69 O.S. 1101 [69-1101] (1971) or H.B. 1665 on and after August 1, 1974." 2. "In view of the fact that Highway Department employees are already covered under workmen's compensation insurance carried with the State Insurance Fund, 85 O.S. 2b [85-2b] (1971), does Section 34 nevertheless require the contractor to carry additional and therefore duplicitous coverage on the Department's 'architects and engineers' *** during construction?" 3. " In view of the fact that the Highway Department is immune from suit in tort for the negligent acts or omissions of its servants, agents, officers and employees, Jack v. State Highway Commission, 183 Okl. 375,82 P.2d 1033 (1937), and in view of the further fact that the Highway Department maintains liability insurance on its entire fleet of vehicles pursuant to 47 O.S. 157.1 [47-157.1] (1971), et seq., what requirement, if any, does Section 34 make with respect to the contractor furnishing 'public liability insurance' for the Department, its 'architects and engineers'?" 4. "In the event your answer to either of the foregoing questions is that workmen's compensation or public liability insurance is required: "a. Must such insurance be furnished for persons other than 'architects or engineers', as those terms are specifically defined by 59 O.S. 45.3 [59-45.3] and 59 O.S. 475.2 [59-475.2] [59-475.2] (1971)? "b. Need employees of the Department other than 'architects or engineers' actually performing services on a particular project during construction be covered?" 5. "Finally, if you should rule that either type of insurance or any variation thereof must be furnished by the contractor pursuant to Section 34, if such insurance cannot be purchased on the insurance market, does ' impossibility' relieve the contractor of the statutory duty, and may the Department proceed with the contract awards and work orders even though such insurance cannot be furnished as the state purports to require?" 6. Do federal regulations prohibiting the requiring of maintenance bonds on federal aid highway projects supersede the maintenance bond requirements of H.B. 1665? 7. Are right-of-way clearance contracts of the State Highway Department subject to H.B. 1665? Title 69 O.S. 1101 [69-1101] (1971) provides requirements and procedures for competitive bidding on contracts for construction work on the State Highway System. H.B. 1665 of the 1974 Legislature is a comprehensive act applying to the State and its subdivisions and provides requirements and procedures for competitive bidding on major construction projects. The express language of H.B. 1665 makes the State Highway Commission subject thereto. In Section 2 of the Act, the term " public agency " is defined as including, "the State of Oklahoma . . . and any department, agency, board, bureau, commission, committee or authority of any of the foregoing public entities." The term "public construction contract" is defined as any contract in excess of $2,500.00 "awarded by any public agency for the purpose of making any public improvement or constructing any public building or making repairs to the same." (Emphasis added) The State Highway Commission must be construed, therefore, as subject to the provisions of H.B. 1665 unless the Commission is exempted from its requirements by reason of the existence of the provisions of 1101 of Title 69 on the same subject. There is authority for the proposition that where a general act is enacted subsequent to a specific act on the same subject, that the specific act remains in effect as an exception to the general act. See 73 Am.Jur.2d Statutes, 416. The rule that a general law does not affect specific laws on the same subject, as well as the general rule that repeals by implication are not favored, are overcome in this instance, however, by the language of Section 33 of H.B. 1665 which reads as follows: "Section 33. If a statute, charter or general ordinance provides more stringent standards or procedures than those provided by this act, then the statute, charter or general ordinance shall prevail." It is therefore clear that the Legislature contemplated that H.B. 1665 would apply in situations governed by specific existing statutes and that conflicts would be resolved in favor of the more stringent provision. It should be noted that, in general, the provisions of Section 1101 and H.B. 1665 are consistent and capable of being harmonized. In Shriver v. Graham, Okl. Cr., 366 P.2d 774, it is stated: "It is a familiar rule that repeals by implication are not favored and where two statutes covering in whole or in part the same matter are not irreconcilable, effect should be given, if possible, to both . . . The intention to repeal, however, will not be presumed, nor the effect of the repeal admitted, however, will not be presumed, nor the effect of the repeal admitted, unless the inconsistency is unavoidable, and only to the extent of the repugnance." Under this rule, effect should be given to both Section 1101 and H.B. 1665 insofar as their provisions are not in conflict. In those instances where there is a conflict, the provisions of Section 33 of H.B. 1665 require that the more stringent provision prevail. As to your second question, Section 34 of H.B. 1665 provides as follows: " . . . The contractor shall name the public agency, together with its architects or engineers, as an additional assured under any liability and workmen's compensation insurance required by this act." The insurance requirements of the Act are provided by subsection 4 of Section 13, wherein the contractor must provide: "4. Public liability and workmen's compensation insurance during construction in reasonable amounts." It would seem that with respect to workmen's compensation insurance the purpose of the second sentence of Section 34 is to afford the public agency along with its architects and engineers protection from any workmen's compensation liability by reason of benefits accruing to employees of the contractor, its subcontractors and suppliers. The workmen's compensation insurance "required by this act" relates to coverage of the above named employees. Thus, no duplicate coverage is contemplated and there is no basis for waiver of the requirement. As to your third question, it would seem that with respect to public liability insurance the requirement of the second sentence of Section 34 is to afford the public agency along with its architects and engineers protection from any liability within the coverage of the contractor's public liability policy as "required by this act." It is apparent that the intent of requiring such endorsement is not to extend the scope of the policy beyond that of a contractor's public liability policy and cover claims based on acts of the architects or engineers of the agency. Rather, it is intended that the agency and its architects and engineers be included under the contractor's policy covering potential liability based on acts of the contractor, its subcontractors and suppliers, and their employees. As to your fourth question, the statute requires only that "the public agency, together with its architects and engineers" be named as additional assureds. The architects and engineers as defined by 59 O.S. 45.3 [59-45.3] and 59 O.S. 475.2 [59-475.2] [59-475.2] (1971), would seem to be the professional employees or private consultants of the public agency. Further, the statute does not require that employees other than architects and engineers be covered. As to your fifth question, a plain reading of the statute discloses that the bond and insurance requirements of Section 13 are statutory requisites to the execution of the contract. The inability to obtain the required public liability insurance by reason of the failure of such coverage to be available on the market could not relieve the contractor of such requirement. The rule of "impossibility" relates to the law excusing performance of a contract under certain circumstances. See 17A C.J.S. Contracts, 461 et seq. In this instance, no contract can be executed unless the statutory conditions are met. There is no basis for the application of the doctrine of the impossibility. The public agency would not, therefore, be entitled to proceed with the contract execution and work order. As to your sixth question, the provisions of 69 O.S. 304 [69-304](d) (1971) read as follows: "The commission shall have authority to make all contracts and do all things necessary to cooperate with the United States government in matters relating to the cooperative construction, improvement and maintenance of the state highway system, or any road or street of any political or governmental subdivision or any municipal or public corporation of this state, for which federal funds or aid are secured. Such contracts or acts shall be carried out in the manner required by the provisions of the acts of Congress and rules and regulations made by an agency of the United States in pursuance of such acts." A similar provision is provided by 69 O.S. 401 [69-401] (1971). The public policy of this State to comply with federal statutes and regulations relating to federal highway projects is clear from the above statutes. The conflict between the federal regulations and H.B. 1665 relative to the maintenance bond requirements should thus be resolved in favor of compliance with the federal regulation. A similar conclusion was reached in an opinion of the Attorney General dated October 18, 1960, to the effect that state statutes setting residency requirements for old-age assistance were superseded by a less restrictive residence requirement under federal law by virtue of an Oklahoma statute authorizing the Oklahoma Public Welfare Commission to conform to the requirements of federal agencies. As to your seventh question, paragraph 4 of Section 2 of H.B. 1665 provides the following definition: "4. 'Public construction contract' or 'contract' means any contract, exceeding Two Thousand Five Hundred Dollars ($2,500.00) in amount, awarded by any public agency for the purpose of making any public improvements or constructing any public building or making repairs to the same." In Mazel v. Bain, 133 So.2d 44
(1961), the Supreme Court of Alabama held that the clearing, grading or excavation of land is a permanent improvement upon the land within the meaning of the mechanics lien statute. The Court relied upon the following definitions of the term "improvement": "Warvelle on Ejectment, 557, defines improvement: 'An improvement, generally speaking, is anything that enhances the value of land.' The word is defined in Black's Law Dictionary, 4th Edition: 'A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of water, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." The Court further relied on the case of Green v. Reese, Okl., 261 P.2d 596, in which the Supreme Court of Oklahoma held that labor per formed with a tractor, bulldozer and scraper upon certain vacant lots for future construction was a lienable item within the meaning of 42 O.S. 141 [42-141] (1951), which gave a lien to any person who performs labor "for the erection, alteration, or repair of any building, improvement or structure thereon." Considering the above authorities, it is apparent that right-of-way clearance contracts involve the making of public improvements within the meaning of H.B. 1665. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: Contracts for construction on the State Highway system are subject to the provisions of 69 O.S. 1101 [69-1101] (1971) as well as H.B. 1665 of the 1974 Legislature insofar as the two statutes are not in conflict. As to those instances of conflict, the more stringent provision is to be followed. The requirement of endorsing the agency and its architects or engineers as an additional assured on the contractor's workmen's compensation policy may not be waived by reason of the existence of a policy covering claims of the agency's employees since the endorsement contemplated would not result in coverage of claims of employees other than those of employees of the contractor, its subcontractors and suppliers. Likewise, the public liability endorsement may not be waived by reason of the existence of the doctrine of sovereign immunity or vehicle liability insurance since the endorsement contemplated would not result in coverage of claims beyond that of the contractor's public liability-policy covering potential liabilities based on acts of the contractor, its subcontractors and suppliers, and their employees. The only persons required to be named as additional assureds along with the public agency under such policies are the public or private professional architects and engineers as defined by 59 O.S. 45.3 [59-45.3] and 59 O.S. 475.2 [59-475.2] [59-475.2] (1971) assigned to the particular project. The inability to acquire the required insurance provides no basis for relieving the contractor of his statutory duty or for the agency to proceed with the execution of the contract and work order. Federal regulations prohibiting the requirement of maintenance bonds on federal highway projects supersede provisions of H.B. 1665 by virtue of 69 O.S. 304 [69-304](d) and 69 O.S. 401 [69-401] (1971). Right-of-way clearance projects constitute public improvements and such contracts are subject to the provisions of H.B. 1665. (Joe C. Lockhart)