## GRAND RIVER DAM AUTHORITY v. BOARD OF EDUCATION OF TOWN OF WYANDOTTE.

No. 31226. Dec. 21, 1943.

*147 P. 2d 1003.*

Edward P. Marshall, General Counsel, Grand River Dam Authority, and Jesse L. Ballard, both of Tulsa, for plaintiff in error.

Frank Nesbitt and Nelle Nesbitt, both of Miami, for defendant in error.

HURST, J. This is a suit to recover for damage caused to plaintiff's property by water impounded by the Grand River Dam. The question presented is whether the defendant, the Grand River Dam Authority, is relieved from liability by reason of the fact that in causing such damage it operated its dam in the manner directed by the Secretary of War as it was required to do under its license.

The defendant is a governmental corporation created for the purpose of utilizing the waters of Grand River and its tributaries. 82 O. S. 1941 § 861. The plaintiff is a school district whose school property is located in the town of Wyandotte near the confluence of the Neosho and Spring rivers. After its creation, the defendant, being desirous of constructing a large dam on Grand River, instituted proceedings looking to the procurement of the necessary license from the Federal Power Commission. On February 11, 1938, the commission ruled that the construction of the proposed dam would affect interstate commerce and assumed jurisdiction. On July 5, 1939, the commission issued a license to defendant, authorizing it to construct the dam upon the terms and conditions set forth therein. Article 13 of the license provides:

"The Licensee is hereby authorized to operate the reservoir in such a manner as to utilize storage space below elevation 745 for power production purposes but not to utilize any storage space above said elevation 745 for power production purposes except during periods when the reservoir is being operated for the control of floods. The storage capacity between elevations 745 and 755 shall be expressly reserved for the control of floods. The Licensee shall impound flood waters in the storage space between elevations 745 and 755, and release flood waters therefrom, when, as, and in the manner directed by the Secretary of War, or his authorized representative; provided, that the Licensee shall not be required to impound any water above elevation 750 until the United States has acquired the necessary flowage rights above that elevation."

On July 11, 1939, defendant accepted the terms of the license and thereafter constructed the Grand River Dam. The waters impounded thereby are known as Lake O' The Cherokees. 82 O. S. 1941 § 861.

During October and November, 1941, heavy rainfalls in the watershed of Grand River above the dam caused a large body of flood water to flow down Neosho and Spring rivers into said lake. When the waters reached an elevation of 745 feet at the dam, the defendant notified the engineers of the War Department at Tulsa, the designated agents of the Secretary of War, and thereafter regulated the water level of the lake by opening and closing the gates of the dam as directed by said engineers. On October 30, 1941, the engineers directed the defendant to impound the water until it reached an elevation of 749.7 at the dam, and then to permit the outflow to balance the inflow. It was established that when heavy flood waters flow into a stationary body of water, they have a tendency to pile up, so that their elevation above sea level is greater at the point where they flow into the stationary body of water than at the dam. This effect is known as a "back water curve." The defendant notified the engineers at Tulsa that an elevation of 749.7 feet at the dam would mean an elevation of approximately 752 feet at Wyandotte, but it was told to carry out the orders previously given. The defendant thereupon permitted the lake level to build up an elevation of 749.7

feet at the dam, and, because of the resultant back water curve, the lake level at Wyandotte reached an approximate level of 752 feet, or two feet above the elevation to which the defendant had acquired land for the lake bed. As a result the waters of the lake backed upon plaintiff's school grounds and percolated into the school basement and a water well located in the school yard, causing damage in regard to which there is no dispute.

Article 17 of the license granted to defendant by the Federal Power Commission provides:

"The Licensee shall be liable for all damages occasioned to the property of others by the construction, operation, or maintenance of the project works or of the works appurtenant or accessory thereto, and in no event shall the United States be liable therefor."

And 82 O. S. 1941 § 862 provides:

"Provided said District shall be liable for all damage caused by said District. its agents, servants and employees in creating, constructing, maintaining or operating said District to any corporation, partnership, person or individual whose property, either real or personal, within or without said District, has been damaged and said damages may be determined by appropriate action in the same manner as provided by law under the Conservancy Act of the State of Oklahoma."

Plaintiff, treating 82 O. S. 1941 § 664 as the applicable law for determining damages "under the Conservancy Act of the State of Oklahoma" as provided in section 862, above, resorted to the method of procedure therein outlined to recover its damages. Appraisers were appointed and other proceedings were had in conformity with the provisions of said section 664. At the conclusion of such proceedings judgment was entered for plaintiff in the sum of $902.65 and costs. Defendant appeals.

1. There is no dispute between the parties as to the propriety of the remedy which plaintiff has pursued in this case. However, for their guidance in other cases, the parties ask us to determine whether the method of procedure outlined by 82 O. S. 1941 § 664 is the manner "provided by law under the Conservancy Act of the State of Oklahoma" for the determination of damages in this class of cases, referred to in 82 O. S. 1941 § 862, or whether it may not also be the method outlined in 82 O. S. 1941 § 486. They also seek an adjudication of whether the remedy provided by 82 O. S. 1941 § 862 is exclusive, or merely a remedy given in addition to an ordinary civil action. The district judge has also asked us to determine whether he has jurisdiction to proceed at all under the provisions of the Conservancy Act.

After careful consideration we have concluded that, except as to the question of jurisdiction under section 664, above, we should not answer these questions. There is no actual controversy between the parties in regard to them. And anything we might say on these questions would be dictum. We prefer to pass upon such questions when they arise in the course of an actual controversy. Since we may always notice the questions of jurisdiction, whether raised by the parties or not, we may pass upon the question as to whether such proceedings may be prosecuted under said section 664. We are of the opinion, and hold, that the courts do have jurisdiction under 82 O. S. 1941 § 862 to ascertain the damages in this class of cases in the manner provided by 82 O. S. 1941 § 664, which is found in what is known as the Conservancy Act of the State of Oklahoma, chapter 139, S. L. 1923-24.

2. Defendant urges that it is not liable for the damage because in impounding the waters it acted in accordance with directions given it by an authorized representative of the federal government. It relies upon the rule that servants of the federal government, or persons who contract with the federal government, are not responsible for their acts done in pursuance of the contract with, or lawful directions of, the federal government, citing Chattanooga & Tennessee River Power Co. v. Lawson, 139 Tenn. 354, 201 S. W. 165; Evans v. Massman Construction Co., 343 Mo.

632, 122 S. W. 2d 924; United States v. Lynah, 188 U.S. 445, 23 S. Ct. 349, 47 L. Ed. 539; Salliotte v. King Bridge Co. (C. C. A. 6th) 122 Fed. 378; Yearsley v. Ross Construction Co., 309 U. S. 18, 84 L. Ed. 554, and similar cases. We think, however, there is a distinction between that class of cases and the case under consideration. If the federal government had contracted with defendant to construct the dam or had employed it to operate the dam as a flood control project, then the acts of the defendant might be regarded, not as its personal acts but as the acts of the federal government for which defendant would, under the cited cases, not be liable. But such is not the case here. The defendant, a state agency (82 O. S. 1941 § 861), built and operates the project. Before the government would issue the requisite permit it required defendant to obligate itself to provide flood water storage to an elevation of 750 feet, and to release and impound the waters between the elevation of 745 and 755 feet as required by the Secretary of War. In so doing, however, the defendant is liable to third parties exactly as though it had performed the acts of its own volition, which in legal effect it did, for it was not required to accept the provisions of the license and construct the dam.

As pointed out by the defendant, article 17 of the license, above quoted, is similar to a federal statute on the question (Tit. 16, sec. 809, U. S. C. A.), and it has been construed to merely protect the federal government from liability, not to impose liability on the licensee. Corrigan Transportation Co. v. Sanitary District, 125 Fed. 611, 137 Fed. 851; Alabama Power Co. v. Smith, 229 Ala. 105, 155 So. 601; Louisville Hydro-Electric Co. v. Coburn, 270 Ky. 624, 110 S. W. 2d 445. But here the defendant is a state agency, and its liability is fixed by the act under which it is created. 82 O. S. 1941 § 862. The plaintiff suffered damages by reason of the act of the defendant in causing water to back up on its property above the 750-foot level, the height at which it had acquired the right to so impound waters.

If, under the license, the army had the right to insist that it permit the water to accumulate at the dam until it reached a level of 749.7 feet, the defendant should have anticipated that fact and should have condemned the property above the dam so as to protect against the piling up of the water above that level at the confluence of the two rivers. This it did not do. None of the authorities cited by the defendant support the view that under such circumstances it should be relieved from liability because it had placed itself in the position where, by complying with the license, it committed the wrong to third parties here complained of.

Judgment affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, WELCH, and ARNOLD, JJ., concur. DAVISON, J., absent.