**Ruth E. TEAGUE, Appellant,**

v.

**GRAND RIVER DAM AUTHORITY,
Appellee.**

**No. 62–68.**

United States Court of Appeals,
Tenth Circuit.

April 17, 1970.

Jack E. Gordon, Claremore, Okl. (Bassman, Gordon, Mayberry & Scarth, Claremore, Okl. were on the brief), for appellant.

Ben T. Owens, Miami, Okl. (Q. B. Boydstun, Fort Gipson, Okl., James R. Tourtellotte, Vinita, Okl., John R. Wallace, Melvin H. Landers, Robert S. Gee, Coy Dean Morrow, Miami, Okl., were on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Appeal is taken from a summary judgment against appellant Ruth E. Teague in a wrongful death action brought by her against the Grand River Dam Authority (GRDA) for the death of her husband.[1] Mrs. Teague alleges that GRDA negligently caused decedent's drowning and that death occurred when he was on a water-skiing outing on Grand Lake, claiming that there was negligence by opening the gates of Pensacola Dam in an area used for boating; by failure to warn the public of the hidden undertow caused by opening of the gates; and by other alleged omissions,[2] resulting in his being swept through the gates and into the water below where he drowned.

Summary judgment was granted against appellant on the ground that under Oklahoma law GRDA is a State agency immune from such wrongful death actions. The District Court held that the flood control program under GRDA's license was a public and not a proprietary function;[3] that 82 O. S. §

---

[1] The suit was commenced in the Oklahoma State Court but was removed to the Federal District Court under 28 U.S.C. § 1442(a) (1) by the Authority. While appellant resisted removal below, both parties now agree that removal jurisdiction exists. The facts are admitted showing, among other things, that release of water was here ordered by the Corps of Engineers under authority of the Secretary of Defense so that GRDA acted under an officer of the United States within the meaning of § 1442(a) (1). The removal was sustained by the District Court under this statute, 279 F. Supp. 703, and we agree. See also Colorado v. Maxwell, 125 F.Supp. 18 (D.C. Colo.); and Texas ex rel. Falkner v. National Bank of Commerce of San Antonio, 290 F.2d 229 (5th Cir.), cert. denied, 368 U.S. 832, 82 S.Ct. 55, 7 L.Ed. 2d 35.

[2] Mrs. Teague alleges negligence by GRDA in opening the gates in an area heavily used for boating, camping and the like, on a holiday weekend (the July 4 weekend, 1967) without warning; by failure to warn the public of the hidden undertow created by opening the gates that had not been used for more than five years; by failure to use a lake patrolman to prevent persons from using the area near the spillway; by failure to erect and maintain danger signs; by failure to maintain an original float and cable bar-

rier, and to erect and maintain another such barrier between the gates and the boating area; and by failure to close the gates after notice of decedent's passing through them, until hope for his recovery was over. The tragedy occurred after decedent climbed into the pulling boat. When the outboard motor was re-started, the tow rope became tangled in the propeller, killing the motor. Before the rope could be removed, the undertow created by the spillway gates pulled the boat through one of the gates and decedent was thrown into the waters below where he drowned.

The affidavit of GRDA's general manager shows that on the date of decedent's drowning, the level of the lake was in excess of 745 feet above mean sea level and that water was being released through the spillway gates by order of the Corps of Engineers in connection with flood control operations pursuant to the provisions of GRDA's license from the Federal Power Commission.

[3] In its operations GRDA produces electrical energy which is sold to private consumers and public utilities. Appellant argued to the District Court that GRDA's operation was a proprietary function and not a governmental one so that sovereign immunity does not apply. In some instances the Oklahoma Court has referred to GRDA's operations as proprietary. See, e. g., Grand Hydro v. Grand River

862(q) limits GRDA's liability for wrongful acts in fulfilling such functions to damages to personal or real property; that there was no waiver of immunity from liability for personal injury; and that, therefore, this wrongful death action could not be maintained.

 Oklahoma follows the familiar principles of sovereign immunity and suit against the State may not be maintained without consent by direct legislative enactment.[4] Unless it is waived by statute, the immunity generally applies to State agencies acting in a governmental capacity, but not where they engage in a business or proprietary function.[5] As to a State agency immunity is not presumed but is strictly construed.[6] And the statute providing a remedy for property damage caused by GRDA is liberally construed.[7] As discussed in note 3, supra, the District Court concluded that the particular function here involved is governmental, and we agree and proceed on that premise.

 The statutes creating GRDA declare it to be a governmental agency, a body politic and corporate, with powers of government and with authority to exercise the rights, privileges and functions specified—control, storing, preservation and distribution of waters of the Grand River and its tributaries, among other things. 82 O. S. 1961 § 861. Included among the powers of the authority is the right "[t]o sue and be sued in its corporate name." 82 O. S. 1961 § 862 (j). The controlling provision dealing with waiver of immunity appears in § 862(q) which provides for liability " * * * to any corporation, partnership, person, or individual whose property, either real or personal, within or without said District, has been damaged * * *."[8] The District Court held that § 862 does not permit wrongful death actions against GRDA, and we turn now to appellant's arguments in support of the appeal from that ruling.

Appellant argues that the District Court erred in concluding that "[t]he statute allows actions only in cases which involve damage to personal or real property. There is no waiver as to personal injuries." Appellant's argument is made in two parts. First she says that her action is not an unconsented suit for personal injuries but is a wrongful death action. Secondly she contends that the wrongful death action

Dam Authority, 192 Okl. 693, 139 P.2d 798; Grand River Dam Authority v. Grand-Hydro, 188 Okl. 506, 111 P.2d 488; and State ex rel. State Insurance Fund v. Bone, 344 P.2d 562, 565–567 (Okl.). The instant case involves flood control operations and release of water under Federal directives. The District Court concluded that the function was a public one. Appellant here argues that her action is permitted by statute against GRDA for damage to a personal property right she had, so that her suit may be maintained regardless of whether GRDA was acting in a governmental or proprietary capacity.

4. Jack v. Oklahoma, 183 Okl. 375, 82 P.2d 1033; Hawks v. Walsh, 177 Okl. 564, 61 P.2d 1109; National Surety Co. v. State Banking Board, 49 Okl. 184, 152 P. 389.

5. See State ex rel. State Insurance Fund v. Bone, 344 P.2d 562, 565–567 (Okl.); and Donaldson v. Board of Regents, 190 Okl. 269, 122 P.2d 139.

6. Grand River Dam Authority v. Grand Hydro, 188 Okl. 506, 111 P.2d 488, 489.

7. Grand River Dam Authority v. Misenhimer, 195 Okl. 682, 161 P.2d 757, 760.

8. The Grand River Dam Authority Act, now 82 O.S.1961, § 861, et seq., created GRDA in 1935. In enumerating its powers § 862(q) provides in pertinent part:
"(q) To do any and all other acts or things necessary or convenient to the exercise of the powers, rights, privileges, or functions conferred upon it by this Act or any other act or law. Provided said District shall be liable for damage caused by said District, its agents, servants, and employees in creating, constructing, maintaining or operating said District to any corporation, partnership, person, or individual whose property, either real or personal, within or without said District, has been damaged and said damages may be determined by appropriate action as provided by law. Nothing in this Act shall be construed as rendering the District liable for damage where it is not liable on general principles of law or statute or Constitutional provision."

is one for injury to her pecuniary property right in the life of her husband so that it is a permitted suit for damage to personal property.

In advancing the argument appellant points to the familiar distinction recognized in Oklahoma and in many States between wrongful death actions and personal injury actions which may be maintained or revived by the personal representative of a decedent for his pain and suffering and other damages. See 12 O. S. 1961, §§ 1053 and 1054; St. Louis & San Francisco R. R. Co. v. Goode, 42 Okl. 784, 142 P. 1185; Breeding, Inc. v. Daniel, 373 P.2d 75 (Okl.); Whitham Construction Co. v. Remer, 105 F.2d 371, 375 (10th Cir.); and Belt v. St. Louis-San Francisco Ry. Co., 195 F.2d 241 (10th Cir.). Furthermore, appellant says that she had a pecuniary interest in her husband's life, and that the right created by the wrongful death statute is personal property, relying on 12 O.S. 1961, §§ 1053 and 1054,[9] statutory definitions of property [10] and case law.[11] Appellant argues that these authorities show that she had a property right which was damaged so that her suit is within those permitted by § 862(q) for damages to personal property.

The Oklahoma Court has emphasized the distinction between personal injury actions that may be revived by a decedent's personal representative and wrongful death actions, saying that the Oklahoma wrongful death statute is of the Lord Campbell's Act type creating a new cause of action to compensate for pecuniary loss by the beneficiaries named. St. Louis & San Francisco R. R. Co. v. Goode, supra, 142 P. at 1187. And the cases do refer to the wrongful death statute as stamping with the character of "estate" or property right the pecuniary interest of the beneficiary in the life of the decedent. See City of Shawnee v. Cheek, supra, 137 P. at 733. However, none of such cases recognizes any vested pecuniary right of the beneficiary as existing until the death. Instead the right covered by the wrongful death act is said to commence with the death. See City of Shawnee v. Cheek, supra, 137 P. at 735; Parker v. National Zinc Co., supra, 406 P.2d at 498; and St. Louis & San Francisco R. R. Co. v. Goode, supra, 142 P. at 1188.

---

9. 12 O.S.1961, §§ 1053 and 1054 provide as follows:

"1053. Death—Action for
When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his personal representative if he is also deceased, if the former might have maintained an action had he lived, against the latter, or his representative, for an injury for the same act or omission. The action must be commenced within two years. The damages must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin; to be distributed in the same manner as personal property of the deceased."

"§ 1054. Action for death—Who may sue
In all cases where the residence of the party whose death has been caused as set forth in the preceding section of this article is at the time of his death in any other State or Territory, or when, being a resident of this State, no personal representative is or has been appointed, the action provided in the said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

10. 60 O.S.1961, §§ 1 and 2 provide as follows:

"§ 1. Definition of property
The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others. In this Chapter the thing of which there may be ownership is called property."

"§ 2. Ownership, what subject to
There may be ownership of all inanimate things which are capable of appropriation, or of manual delivery, of all domestic animals; of all obligations; of such products of labor or skill, as the composition of an author, the good will of a business, trade marks and signs, and of rights created or granted by statute."

11. Appellant relies on City of Shawnee v. Cheek, 41 Okl. 227, 137 P. 724; Parker v. National Zinc Co., 406 P.2d 493 (Okl.), and several cases from other jurisdictions.

Thus even under the concepts relied on, the acts of GRDA may not legally be said to have damaged a right of appellant existing before decedent's death.

■ The theories argued do not overcome the words and intent of § 862(q). The Act created GRDA and fixed its liability. Grand River Dam Authority v. Board of Education, etc., 193 Okl. 551, 147 P.2d 1003, 1005, cert. denied, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1568. It plainly limited the waiver of immunity and allowed suit only by those "whose property, either real or personal, within or without said District, has been damaged * * *." Thus, in case of loss where damage suits might arise, the legislature provided that GRDA should have "a more limited responsibility," State ex rel. State Insurance Fund v. Bone, supra, 344 P.2d at 569. We agree with the District Court that the statute does not contemplate suits for wrongful death of persons injured by such GRDA operations. In any event we accept that interpretation of Oklahoma law by the Federal District Court in the State, since we are not convinced that it is clearly erroneous. Bartch v. United States, 330 F.2d 466 (10th Cir.); Douglas-Guardian Warehouse Corp. v. Jones, 405 F.2d 427 (10th Cir.); Parsons v. Amerada Hess Corp. et al., 422 F.2d 610, (10th Cir.).

Affirmed.