The **TRADERS STATE BANK, GLEN ELDER, KANSAS**, Plaintiff-Appellee,

v.

The **CONTINENTAL INSURANCE COMPANY**, Defendant-Appellant.

No. 639–70.

United States Court of Appeals,
Tenth Circuit.

Sept. 9, 1971.

John Q. Royce, Salina, Kan., for plaintiff-appellee.

F. Philip Kirwan, Kansas City, Mo. (Charles N. Henson, Topeka, Kan., with him on the brief), for defendant-appellant.

Before MURRAH, PICKETT and DOYLE, Circuit Judges.

MURRAH, Circuit Judge.

The financial machinations of E. C. Riley gave rise to this dispute between Traders State Bank and Continental Insurance Company concerning the latter's liability on a Bankers Blanket Bond. After trial on stipulated facts the District Court rendered judgment for Traders. We reverse.

The stipulated facts reveal that in late 1966 the bank suffered a loss of over $191,000 due to a check kiting scheme by Riley. At the time this loss was discovered the bank was insured by National Surety Corporation on a Standard Form No. 24 Bond written on a "loss discovered" basis, i. e. the bond covered losses discovered during its life regardless of when they were sustained. The bank furnished National Surety with proof of loss, but the insurer denied liability and gave notice of cancellation. The bank then secured the bond in suit from Continental as a substitute for the cancelled bond. The Continental bond was also a Standard Form No. 24 policy, identical with the National Surety bond except for the fact that it was written on a "loss sustained" basis, i. e. it covered losses discovered, but only if sustained during its effective life. A common feature of these Standard Form No. 24 bonds was the Superseded Suretyship or Retroactive Extension of Coverage Clause,[1] under the terms of which the current insurer, Continental, agreed to extend its liability to cover any losses sustained prior to termination or cancellation of its bond if the losses "would have been recoverable under the coverage" of the antecedent bond. This clause had the effect of making Continental's bond a loss discovered bond as to any loss sustained during the life of the National Surety bond but discovered during the Continental bond.[2] Subsequent to the Continental

1. "THE LOSSES COVERED BY THIS BOND ARE THOSE SUSTAINED AND DISCOVERED AS FOLLOWS:
   "1. * * *
   "2. Losses sustained by the Insured at any time before the termination or cancelation of this bond as an entirety, which would have been recoverable under the coverage of any other insurance carried by the Insured or any predecessor in interest of the Insured and giving some or all of the coverage afforded under the Insuring Clause of this bond applicable to such losses, had such other insurance given all the coverage afforded under such Insuring Clause of this bond; PROVIDED, with respect to losses covered by this paragraph, that
   (a) the applicable coverage of this bond is substituted, on or after noon of the date of this bond, for the coverage given by such other insurance and the Insured or such predecessor, as the case may be, carried such coverage continuously from the time such losses are sustained to the date and hour the coverage of this bond is substituted therefor, and
   (b) such coverage in force at the time such losses are sustained gave some or all of the coverage afforded under the Insuring Clause of this bond applicable to such losses, and
   (c) at the time of discovery of such losses, the period for discovery of loss under all bonds and policies of insurance which afford coverage applicable to such losses and for which the coverage of this bond is substituted, has expired, and
   (d) if the applicable amount of this bond is larger than the amount of coverage under any other insurance carried by the Insured or such predecessor, as the case may be, and in force at the time such losses are sustained, and giving some or all of the coverage afforded under the Insuring Clause of this bond applicable to such losses, then liability hereunder for such losses shall not exceed the smaller amount."

2. The trial court noted that both parties were aware that the bank had chosen not to exercise its option under the discovery rider of the National Surety bond to extend coverage for any losses discovered within a twelve-month period after the termination of that bond. But this is of no consequence, inasmuch as the

bond becoming effective, National Surety and the bank entered into an agreement whereby National Surety was released from any and all obligations under the cancelled bond in return for a payment to the bank for the face amount of the bond in the sum of $25,000.

Thereafter, in July of 1967, the bank discovered a loss of approximately $181,-000 resulting from the sale of forged notes to the bank by the same E. C. Riley who had been involved in the check kiting scheme. This lawsuit centers around the asserted liability of Continental for the face amount of its bond, the sum of $25,-000, for the loss suffered by the bank due to the purchase of the forged notes.

■ The bank bases its assertion of liability on two separate and distinct provisions of the Continental bond. First, it says that the loss on the forged notes was sustained at the time it discovered the forgery and became aware of the inability of Riley as an endorser to make the notes good, i. e. after the effective date of the Continental bond. If this is so our lawsuit is at an end, for the Continental bond clearly covers discovered losses sustained during its life. Although the Kansas courts have not spoken to this matter, Judge Templar ruled on motion for summary judgment that if presented with the issue they would hold that the loss was sustained at the time of purchase of the notes, i. e. before the effective date of the Continental bond. We cannot say that the Kansas District Judge's forecast of Kansas law is clearly erroneous, we thus accept his ruling as the law of this case. See Goodyear Tire and Rubber Company v. Jones, 433 F.2d 629 (10th Cir.); Teague v. Grand River Dam Authority, 425 F.2d 130 (10th Cir.); Brunswick Corporation v. J. & P., Inc., 424 F.2d 100 (10th Cir.); Parsons v. Amerada Hess Corporation, et al., 422 F.2d 610 (10th Cir.); Fulton v. Coppco, Inc., 407 F.2d 611 (10th Cir.).

This brings us to the basis of the trial court's judgment, to the effect that Continental was liable under the Retroactive Extension of Coverage provision of the bond. Paraphrasing the limiting provisions of the Retroactive Extension of Coverage provision (as set out in subsections 2(a), (b), (c) and (d), supra in n. 1), Judge Templar set out five conditions for coverage under Continental's bond. These conditions are:

(1) The bank must previously have carried other similar insurance;

(2) The current bond must have superseded such other insurance;

(3) The insurance coverage under the first bond when the loss was sustained must have afforded some or all of the coverage afforded under the second bond;

(4) The period for discovery of loss must have expired under the first bond; and

(5) If the amount of the current bond is larger than the amount of the first bond, liability is limited to the smaller amount.

Finding all five of these conditions met in this case, and having conclusively held that the National Surety bond was in effect when the loss on the forged notes was sustained and continued in effect until the effective date of the Continental bond, Judge Templar concluded, without more, that the loss was covered by the Continental bond and thus Continental was liable for the loss on the notes.

Continental does not argue that these five conditions of coverage were not met. Indeed, "coverage" is uncontested. Continental's contention is that it is not liable for the loss under its bond simply because such loss would not have been "recoverable" under the coverage of the National Surety bond at the time it was discovered. This is so, says Continental, because Section 6(c) of the National

Retroactive Extension Clause in the Continental bond provided the same coverage. And see the "Digest of Bank Insurance" (cited in the trial court's decision) at 21–a, pointing out that the option may not be exercised where, as here, a substitute bond is obtained by the insured.

Surety bond [3] provides that the insurer's total liability for separate losses caused by the same person is limited to the face amount of the bond, which was exhausted by National Surety's payment on Riley's check kiting scheme.

We too think Judge Templar's analysis of the critical language of the bond stops short of the determinative issue in our lawsuit. For, even though all the conditions of "coverage" under the Continental bond were fully met, we must further consider whether the losses are "recoverable" under the coverage of the antecedent bond. The word coverage is, indeed, a term of art in the insurance industry, meaning "the sum of all the risks assumed under the policy." See Words and Phrases, "Coverage" Vol. 10, at 511 (1968). Use of the word "recoverable," however, in the crucial phrase of the Retroactive Extension Clause was, undoubtedly, intended as an express limitation on the liability assumed by the insurer.

We are cognizant of the established rule that exceptions or limitations upon coverage in an insurance contract are to be construed in a light most favorable to the insured. See Transamerica Ins. Co. v. Gage Plumbing and Heating Company, 433 F.2d 1051, 1054 (10th Cir.); Mutual of Omaha Insurance Company v. Russell, 402 F.2d 339, 345 (10th Cir.), cert. denied, 394 U.S. 973, 89 S. Ct. 1456, 22 L.Ed.2d 753; Phillips v. Government Employees Insurance Company, 395 F.2d 166, 167 (6th Cir.). But the purpose of this rule is to aid the court in arriving at the intentions of the parties as expressed in the language of the contract, and it should not be used as a handmaiden to frustrate their manifest intentions. See Transamerica Ins. Co. v. Gage Plumbing and Heating Company, supra; Phillips v. Government Em-

ployees Insurance Company, supra; Cave Construction, Inc. v. United States, 387 F.2d 760, 762 (10th Cir.). " * * * [A] contract should be interpreted as a harmonious whole to effectuate the intention of the parties, and every word, phrase or part of a contract should be given a meaning and significance according to its importance in the context of the contract." Colorado Milling and Elevator Co. v. Chicago, R. I. & P. R. Co., 382 F.2d 834, 836 (10th Cir.). This same idea is expressed in different language in the cases of Nevada Half Moon Co. v. Combined Metals Reduction Co., 176 F.2d 73, 75 (10th Cir.), cert. denied, 338 U.S. 943, 70 S.Ct. 429, 94 L.Ed. 581; and Miller v. Miller, 134 F.2d 583, 588 (10th Cir.), cert. denied, 320 U.S. 744, 64 S.Ct. 46, 88 L.Ed. 441, which were relied upon by the trial court. See also Carlock v. National Co-Operative Refinery Association, 424 F.2d 148, 151 (10th Cir.); 3 Corbin, Contracts § 549 (1960).

It is, perhaps, unusual in common parlance to say that a loss brought within the coverage of a bond is not recoverable under the bond. Yet we know that coverage does not necessarily spell recoverability. Though we are cited to and have found no case construing the phrase "recoverable under the coverage" in a Standard Form No. 24 Bankers Blanket Bond, no one suggests that it is strange or anomalous to this type of bond. We think the phrase clearly expresses the insurer's intention to place a limitation on the liability it assumed under the Retroactive Extension Clause; a limitation of common usage which the bank should have understood and appreciated.

When the phrase is accorded its due significance in this bond the limitation which Section 6(c) placed on National Surety's liability becomes the critical factor in determining Continental's liability.

---

3. "Section 6. Payment of loss under this bond shall not reduce the liability of the Underwriter under this bond for other losses whenever sustained; PROVIDED, however, that the total liability of the Underwriter under this bond on account of * * * (c) any loss or loses other than those specified in (a) and (b) preceding [neither is applicable], caused by acts or omissions of any person (whether one of the Employees or not) or acts or omissions in which such person is concerned or implicated, * * * is limited to the sum above stated in the opening paragraph of this bond irrespective of the total amount of such loss or losses."

In making application of Section 6(c), two dates might be used when determining this liability, and the choice between them is decisive to the outcome of this case. We think the trial court erroneously relied on the date when the Continental bond became effective, January 24, 1967, rather than the date when the loss was discovered, July of 1967.

Obviously under any bond of this type a loss must be discovered before it can be asserted. The insurer's performance is not due until the date of discovery. The risks to be covered are, to be sure, determined at the date the bond becomes effective; but the liability under the bond must necessarily be determined at the time performance is due—when loss is discovered. Section 6(c)'s limitation on the insurer's liability for separate losses caused by one person is in the nature of a condition precedent to recovery, which must be taken into consideration at the time performance is due.

As we construe the Retroactive Extension Clause in conjunction with Section 6(c), it was not intended to allow double coverage for an insured in the unique position which the bank now finds itself. Its purpose was, rather, to provide the bank with coverage, which it would not otherwise have had, for losses discovered but not sustained during the life of a "loss sustained" bond. The effect of this construction is to limit Continental's liability for losses sustained during the life of the antecedent bond but discovered during the life of its bond to amounts that would have been recoverable under the antecedent bond if it had been in effect at the time the losses were discovered. This being so, the payment by National Surety of $25,000, before Continental's performance was due, exhausted its liability according to the terms of Section 6(c). National Surety's liability being exhausted, there was no further recoverable loss under the coverage of the Continental bond. The judgment is accordingly reversed and remanded with directions to enter judgment for Continental.