HEALTHPARTNERS, INC., Relator,

v.

James C. BERNSTEIN, in his capacity as Commissioner of the Minnesota Department of Commerce, Minnesota Comprehensive Health Association, Respondents.

No. C6–02–870.

Court of Appeals of Minnesota.

Jan. 14, 2003.

Gregory R. Merz, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, for relator.

Mike Hatch, Attorney General, Steven B. Liss, Assistant Attorney General, St. Paul, MN, for respondent commissioner.

Douglas L. Elsass, Fruth, Jamison & Elsass, P.A., Minneapolis, MN, for respondent MCHA.

Considered and decided by SCHUMACHER, Presiding Judge, HALBROOKS, Judge, and HUDSON, Judge.

## OPINION

HALBROOKS, Judge.

Relator HealthPartners, Inc. challenges the decision of the Commissioner of the

Minnesota Department of Commerce denying its appeal of its MCHA assessments for the years 1997, 1998, and 1999. HealthPartners argues that the payments it received pursuant to Medicare cost contracts were not payments received "for coverage" under Minn.Stat. § 62E.02, subd. 23 (2002). As a result, HealthPartners contends, the payments are not includable in its "total accident and health insurance premium[s]" under Minn.Stat. § 62E.11, subd. 5 (2002), for purposes of determining its annual MCHA assessment. Because we conclude that the payments received by HealthPartners under Medicare cost contracts are payments received "for coverage" that are includable in HealthPartners' "total accident and health insurance premiums[s]" for purposes of determining HealthPartners' MCHA assessments, we affirm.

## FACTS

In 1976, the Minnesota legislature established the MCHA, a nonprofit corporation created to provide health-insurance coverage to Minnesota residents who are unable to obtain insurance in the private market. Minn.Stat. § 62E.10 (2002). Membership in the MCHA is a mandatory condition of doing business in Minnesota in the fields of accident and health insurance, self-insurance, health-maintenance organization (HMO), or as a community integrated service network. Minn.Stat. § 62E.10, subd. 3. MCHA membership includes insurers, self-insurers, fraternal organizations, HMOs, and other insurance-related organizations. Minn.Stat. § 62E.10, subd. 1. HealthPartners is an HMO operating in Minnesota and a contributing member of the MCHA.

The cost of the MCHA's plan is paid in part by annual assessments that the MCHA levies on its members. Members

are liable for claims expenses that exceed premium payments allocated to the payment of benefits. Minn.Stat. § 62E.11, subd. 5 (2002). Each contributing member shares in the expenses of the comprehensive health-care plan in an amount equal to the ratio of the contributing member's total accident- and health-insurance premiums received from Minnesota residents, divided by the total accident- and health-insurance premiums received by all contributing members from or on behalf of Minnesota residents. *Id.* For purposes of determining a member's assessment, the phrase "accident and health insurance premiums" is defined as "payments received from or on behalf of Minnesota residents for coverage by a health maintenance organization." Minn.Stat. § 62E.02, subd. 23 (2002).

Subchapter XVIII of the Social Security Act, commonly known as Medicare, established a program under which the federal government provides health insurance to eligible individuals. *See* 42 U.S.C. §§ 1395–1395ggg (2000). Medicare has two categories of benefits: Part A and Part B. Part A provides coverage for inpatient hospital services, and Part B provides supplemental medical-insurance coverage. *See id.* §§ 1395c–1395i–5, 1395j–1395w–4. To provide benefits under Part B, the Health Care Finance Administration (HCFA),[1] the federal agency responsible for administering Medicare, may contract with third parties, such as HMOs, to furnish covered health-care services to Medicare enrollees. Third parties who contract with HCFA to furnish services to Medicare enrollees may be compensated by HCFA in one of two ways—on a "risk basis" pursuant to a Medicare risk contract or on a "reasonable cost basis" pur-

---

1. HCFA has changed its name to the Center for Medicare and Medicaid Services.

suant to a Medicare cost contract known as a Health Care Prepayment Plan.

The HCFA compensates a party providing health-care services under a Medicare risk contract at a predetermined fixed rate that does not increase or decrease if the amount of service actually provided is greater or less than anticipated. Under a Medicare risk contract, the party providing service bears the risk that the value of the service actually provided will exceed the amount paid for that service.

Under a Medicare cost contract, such is at issue here, the HCFA pays a party its actual cost of providing service. If the amount of service increases or decreases, the amount of payment to the health-care service provider also increases and decreases. The party providing the service under a Medicare cost contract bears no risk.

Each year, contributing members of the MCHA submit a Minnesota Premium Plan/Plan Cost Report form to the MCHA. The form requires each contributing member to identify the amount of accident- and health-insurance premiums it received that year as well as any payments it received that fall under certain statutory exclusions. The MCHA uses the data to determine the amount of accident- and health-insurance premiums received by each contributing member and the total amount of premiums received by all members. The composite information is then used to calculate each contributing member's MCHA assessment.

HealthPartners and other contributing members have included their payments from Medicare cost contracts in their MCHA assessment ratio since the early 1990s. In 1998, for the first time, instead of including 1997 payments received from the HCFA under Medicare cost contracts as accident- and health-insurance premiums, HealthPartners identified these payments as an exclusion. By treating the cost-contract payments as an exclusion, HealthPartners reduced its 1997 payment total by $29,477,626, thereby reducing its proportionate share of the MCHA assessment.[2] HealthPartners' cost-contract revenue in 1998 was $32,458,104 and $42,485,974 in 1999.

In June 1998, the MCHA advised HealthPartners that cost-contract payments were not a proper exclusion. HealthPartners notified MCHA of its intent to appeal to the Member Appeal Committee[3] of the MCHA, on the ground that the 1997 cost-contract payments are not accident- and health-insurance premiums subject to assessment. HealthPartners subsequently appealed its 1998 and 1999 assessments as well. The Member Appeal Committee denied HealthPartners' appeal. HealthPartners appealed the Member Appeal Committee's decision to the MCHA Board of Directors,[4] which upheld the Member Appeal Committee's decision. Pursuant to Minn.Stat. § 62E.10, subd. 2a, HealthPartners appealed the

2. HealthPartners has since paid its assessments based on the inclusion of payments received under Medicare cost contracts for 1997, 1998, and 1999.

3. MCHA appeal committee members are appointed by the chairman of the MCHA board of directors and subject to approval by the board. Each appeal committee must consist of at least three members, who are not enrollees, but who may, but need not, be members of the board of directors. One committee member is designated by the chairman of the board to be the chairman of the committee.

4. The MCHA board of directors is made up of nine directors. Five directors are selected by contributing members, subject to approval by the Commissioner of Commerce, and four public directors are selected by the Commissioner of Commerce, at least two of whom must be plan enrollees. Minn.Stat. § 62E.10, subd. 2.

Board of Directors' decision to the Minnesota Commissioner of Commerce. The commissioner ordered a hearing before an administrative law judge, and both parties moved for summary disposition. The commissioner ultimately adopted the administrative law judge's recommendation and granted MCHA's motion for summary disposition and denied HealthPartners' motion. This appeal follows.

## ISSUE

Are payments made by the HCFA to contributing members for health-care services under Medicare cost-contracts payments received "for coverage," such that the payments are includable in a contributing member's "total accident and health insurance premium[s]" for purposes of determining a "contributing member's" MCHA assessment?

## ANALYSIS

■■■ The decision of an administrative agency will be affirmed on appeal unless there is an error of law, the determinations are arbitrary and capricious, or the findings are unsupported by the evidence. *In re N. State Power Co. For Approval of Its 1998 Resource Plan*, 604 N.W.2d 386, 389 (Minn.App.2000), *review denied* (Minn. Mar. 28, 2000). The scope of this court's review of administrative decisions is provided in Minn.Stat. § 14.69 (2002):

[T]he court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) unsupported by substantial evidence in view of the entire record as submitted; or

(f) arbitrary and capricious.

When reviewing agency decisions,

we "adhere to the fundamental concept that decisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience."

*In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn.2001) (quoting *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn. 1977)). We extend judicial deference, rooted in the separation-of-powers doctrine, to agency decision-makers in the interpretation of statutes that the agency is charged with administering. *Id.*

The objective of all statutory interpretation is to ascertain and effectuate the intent of the legislature. Minn.Stat. § 645.16 (2002). Pursuant to canons of statutory construction, words and phrases should be construed according to rules of grammar and according to their common and approved usage, unless it would be inconsistent with the intent of the legislature. Minn.Stat. § 645.08(1) (2002). Every statute should be construed, if possible, to give effect to all of its provisions. Minn.Stat. § 645.16. Additionally, if possible, no word, phrase, or sentence should be deemed superfluous, void, or insignificant. *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999).

The amount of the assessment levied on each contributing member of the MCHA depends on the amount of "accident and health insurance premium[s]" received by

each member. Minn.Stat. § 62E.11, subd. 5 (2002). Minnesota law states:

> Contributing members shall share in the claims expense of the state plan and operating and administrative expenses of the association in an amount equal to the ratio of the contributing member's total *accident and health insurance premium*, received from or on behalf of Minnesota residents as divided by the total accident and health insurance premium, received by all contributing members from or on behalf of Minnesota residents, as determined by the commissioner.

*Id.* (emphasis added). Chapter 62E defines accident and health insurance premiums as the following:

> For the purposes of determining liability of contributing members pursuant to section 62E.11 payments received from or on behalf of Minnesota residents *for coverage* by a health maintenance organization or community integrated service network shall be considered to be *accident and health insurance premiums*.

Minn.Stat. § 62E.02, subd. 23 (2002) (emphasis added).

The term "coverage" is not defined in Minn.Stat. § 62E.02, subd. 23. HealthPartners asserts that the phrase "for coverage" is defined as payments received in exchange for some assumption of risk, as occurs with an insurance premium. Because there is no risk to a provider under a cost contract with the HCFA, HealthPartners takes the position that those premi-

ums are excluded from the assessment calculation. In support of its position, HealthPartners relies on the definition of "coverage" in Black's Law Dictionary,[5] the use of the term "coverage" in other sections of the statute, cases from other jurisdictions,[6] and a statement in the HCFA *Medicare Managed Care/Plus Choice Manual* that HCFA payments to a cost contractor for covered services rendered to Medicare enrollees do not constitute premiums.[7] HealthPartners contends that the commissioner's interpretation is flawed because it reads the limiting language "for coverage" out of the statute, making all payments received by contributing members subject to assessment, regardless of the purpose of those payments.

The commissioner rejected HealthPartners' definition of "coverage," finding the American Heritage Dictionary definition of "coverage" to reflect its common, ordinary meaning:

> 1. The extent or degree to which something is observed, analyzed, and reported: *complete news coverage of the election.* 2a. Inclusion in an insurance policy or protective plan. b. The extent of protection afforded by an insurance policy. 3. The amount of funds reserved to meet liabilities. 4. The percentage of persons reached by a medium of communication, such as television or a newspaper.

American Heritage Dictionary 421 (4th ed.2000) (emphasis in original).

The commissioner agreed with the ALJ's conclusion, based on the American

---

5. Defining "coverage" as "[i]nclusion of a risk under an insurance policy; the risks within the scope of an insurance policy." Black's Law Dictionary 372 (7th ed.1999).

6. HealthPartners cites to cases from other jurisdictions involving the interpretation of insurance policies and bonds where the term "coverage" was defined as the extent of risk assumed. *See King v. Employers Nat'l Ins.*

*Co.,* 928 F.2d 1438, 1445 (5th Cir.1991); *In re Joint E. & S. Dist. Asbestos Litig.,* 993 F.2d 313, 314 (2d Cir.1993); *Traders State Bank v. Continental Ins. Co.,* 448 F.2d 280, 283 (10th Cir.1971); *Guaranty Nat'l Ins. Co. v. Bayside Resort, Inc.,* 635 F.Supp. 1456, 1458 (D.Vi. 1986).

7. HealthPartners concedes that the manual is not binding authority in this matter.

Heritage Dictionary, that the commonly understood meaning of "coverage" is "whether an insurance plan will assume the cost for the ailment or treatment in question." The commissioner stated that there is no indication that the legislature intended the terms "for coverage" and "for insurance" to be synonymous, thereby limiting an HMO's assessment calculation to risk-based contracts. To put this issue in context, the commissioner looked to Minn. Stat. §§ 62Q.01, subd. 6, 62A.31, subd. 3(q) (2002), both of which define and/or reference "Medicare-related coverage" as including payments to HMOs providing services to Medicare enrollees through risk-based and cost-contract bases.

The commissioner noted that Minn.Stat. ch. 62Q (2002), which governs health plans and health-plan companies in Minnesota, provides guidance in interpreting the phrase "for coverage." Minn.Stat. § 62Q.01, subd. 6, states:

> "Medicare-related coverage" means a policy, contract, or certificate issued as a supplement to Medicare, regulated under section 62A.31 to 62A.44, including Medicare select coverage; policies, contracts, or certificates that supplement Medicare issued by health maintenance organizations; *or policies, contracts, or certificates governed by section 1833 (known as "cost" or "HCPP" contracts)* or 1876 (known as "TEFRA" or "risk" contracts) of the federal Social Security Act, United States Code, title 42, section 1395, et seq., as amended; or Section 4001 of the Balanced Budget Act of 1997(BBA) (Public Law Number 105–33), Sections 1851 to 1859 of the Social Security Act establishing Part C of the Medicare program, known as the "Medicare + Choice program."

(Emphasis added.)

In addition, the commissioner relied on other legislative indicators in support of its decision, including Minn.Stat. § 62E.11, subd. 5 (2002), which excludes certain payments from a member's premiums for assessment calculation. The specific payments excluded are those (1) made by the state to a contributing member for medical assistance, (2) MinnesotaCare, or (3) general-assistance medical-care services under Minnesota Statutes chapters 256, 256B, and 256D (2002). The commissioner noted that the fact that Medicare cost contracts are not specifically excluded is consistent with ·the legislative intent to spread the cost of the state health plan as widely as possible, as indicated in Minn.Stat. § 62E.11 (2002).

Focusing on our standard of review, it cannot be said that the commissioner's decision is arbitrary or capricious or that the findings are unsupported by the evidence in this matter. The ruling that Medicare cost-contract payments should be included in a member's annual MCHA assessment is supported by the statute and longstanding practice.

## DECISION

The Commissioner of the Minnesota Department of Commerce properly found that payments made by the HCFA to relator under Medicare cost contracts are payments received by relator "for coverage" under Minn.Stat. § 62E.02, subd. 23 (2002), such that the payments are includable in relator's "total accident and health insurance premium[s]" under Minn.Stat. § 62E.11, subd. 5 (2002), for purposes of determining relator's MCHA assessment.

**Affirmed.**